## JUAN ARAMBULA V. ANNIE SULLIVAN.

### No. 6738.

<div style="margin-right">80  615<br>90  538</div>

1.   **Oral Testimony to Identity of Land Conveyed by Deed.**—City lots were surveyed and marked 26x120 feet in dimensions and described by block and number in a map duly recorded.   In a deed the owner of a block and who had laid out the lots described lots 1 and 2 as being 60x120 feet each.   He also sold lot No. 3.   The purchaser of lots 1 and 2 took possession 120x120 feet.   In a suit by purchaser of lot No. 3 it was competent to show that there was a mistake in the deeds of lots 1 and 2, and that the said lots were only 26 instead of 60 feet in width, to identify the subject of the deed under the latent ambiguity in it made manifest by the attempt to apply the description in the deed to the lots conveyed.

2.   **Description—Number of Block and Lot Upon Map.**—The designation of the numbers of the lots and the block where the dimensions and locality of each block and lot are delineated upon a town map, are more certain, and do more certainly indicate the identity of the land conveyed as well as the intention of the parties, than a call for the length and width of the lots in the deed.

3.   **False Description.**—If the false description in a contract could apply to one existent subject not in the minds of the parties to the contract it would still be a false description of the thing conveyed; and should be rejected as superfluous if the subject matter of the contract is clearly described and identified by another or preceding clause in the instrument, construed if necessary in the light of surrounding circumstances disclosing the condition of the premises and the intention of the parties.   See facts.

4.   **Construction of Deed.**—A deed for named lots in designated block in a town or city will be considered without express reference, as referring to the official map of such city or town, as part of the description in such deed.

APPEAL from Tom Green.   Tried below before Hon. John C. Randolph.

The opinion states the case.

No briefs reached the Reporter.

MARR, JUDGE.—The appellant brought this suit in the court below against the appellee in the usual form of trespass to try title and for damages to recover "lot No. 3 in block No. 2 in Millspaugh's addition to the town of San Angelo, in Tom Green County."   It appears that said Millspaugh, who is admitted to be the common source of title, laid off said addition and prepared a plat thereof, which he filed in the

county clerk's office for record, the original of which was so filed before he conveyed either the lot claimed by the plaintiff or the two lots claimed and held by the defendant. The lots owned by the defendant are Nos. 1 and 2 in said block No. 2 in said addition. Millspaugh in establishing said addition laid it off in blocks, lots, streets, and alleys. The streets and alleys he conveyed to the town of San Angelo. As shown by the plat in the record, he established and laid off that portion of said block No. 2, containing the lots before designated herein by us as belonging to plaintiff and defendant, and divided it into ten lots of the uniform length of one hundred and twenty and width of twenty-six feet each. The following crude diagram will show according to the plat the relative positions and dimensions of the three lots before described:

| STREET. | 1. Defendant's.  120x26. | ALLEY OR STREET. |
| | 2. Defendant's.  120x26. | |
| | 3. David Hughes, vendor of plaintiff.  120x26. | |

Millspaugh conveyed lot No. 3, described as being "twenty-six feet wide and one hundred and twenty feet deep," to David Hughes on the 4th day of December, 1883, and Hughes conveyed it to plaintiff on the 2d day of March, 1885. The conveyances of the land by Millspaugh (which were by two deeds, each lot being separately conveyed by him) whereby the defendant acquired title to said lots Nos. 1 and 2 were made anterior to the inception of plaintiff's title to lot No. 3. Her first deed was made November 14, 1882, to lot No. 2, and the other to lot No. 1 February 7, 1883. These deeds, however, did not conform to the plat of the addition in giving the size of the lots. Lot No. 1 was described in defendant's deed as follows: "Lot (1) one, block (2) two, town of Concho, Millspaugh's addition to San Angelo, said lot being (60) SIXTY feet front by (120) one hundred and twenty feet deep." The other lot is described in the same language in the other deed, except that it is of course properly designated as lot No. 2.

Defendant's deeds were not filed for record until March 10, 1884, which was subsequent to the purchase of lot No. 3 by plaintiff's vendor David Hughes, but there is no proof that either of these were purchasers for value without actual notice, nor is that question raised in the record, if of any importance in this case. The defendant was shown to be in possession of all three of the lots and to have made improvements on the same, but at what time she took possession or erected the improvements is not made to appear in the record. She did not, however, set

up any claim for compensation for the improvements as a possessor in good faith. We desire to remark in this connection that we do not find any briefs for either party with the record, and that we have been compelled therefore to dispose of this appeal without the assistance of counsel. It is presumed that as the case appears to have been submitted on briefs in the Supreme Court that they have been lost, otherwise the appeal would have been dismissed for want of an appearance.

The chief question presented in the record for our determination is, which description in defendant's deeds must be given effect to? Did she acquire by those deeds any more land than was embraced in lots Nos. 1 and 2 as they really existed at the dates of the deeds and as their dimensions were established by and designated in the plat or maps of Millspaugh's addition to the town of San Angelo? Or, in other words, as Millspaugh owned all of the block at that time, did she obtain title to as much land as would be embraced by making the width of each of her lots sixty feet instead of twenty-six feet, as was in fact its true width, and which would have the effect of making the entire front line of the two lots one hundred and twenty feet instead of fifty-two feet according to the plat and the other description of the land in the deeds? It is to be noted that the defendant's deeds do not refer to the map or plat in so many words, but only to the "addition" which is delineated and designated by the map, as we have seen. As further elucidating somewhat this question, we make the following extracts from the statement of facts, and which is nearly all of the verbal testimony: Davidson, a surveyor, testified that he "had surveyed lots Nos. 1, 2, and 3 in block No. 2, Millspaugh's addition, etc. These lots are in the possession of the defendant. Her dwelling house sits mostly on lot 3, reaching clear across it, and she has lots 1, 2, and 3 inclosed by a fence. I know how lots 1, 2, and 3 are situated, and if lots 1 and 2 were sixty feet wide each they would cover lot 3 entirely and more. These lots by the plat are twenty-six feet wide and one hundred and twenty feet long. Defendant inclosed one hundred and twenty feet square from the north line of lot 1 and extending south one hundred and twenty feet."

Millspaugh testified: "I laid out and own the land, except what I have sold, embraced in Millspaugh's addition to San Angelo. The land and lots adjoin San Angelo. I always sold the lots in my addition by the plat as filed in the county clerk's office; never sold a lot in any other way. I am the same Millspaugh who sold the lots in question in this suit to plaintiff and defendant."

It is very evident we think from this testimony that the real intention of Millspaugh, at least in making the deeds to the lots owned by the defendant, was to give to these lots each only the same width as was shown by and allowed to the lots in the map he had prepared and filed of his addition to the town. He would scarcely be *presumed* to

have intended to derange the other lots in that portion of the block by conveying $4\frac{8}{13}$ lots (Nos. 1, 2, 3, 4, and $\frac{8}{13}$ of No. 5) instead of only two. Upon the other hand it might be inferred from the fact that the defendant inclosed and occupied all three of the lots, and erected her buildings mainly on lot No. 3, that she thought her deeds embraced the three lots, but this is by no means a conclusive presumption, especially as it is not shown at what time she entered into the possession of the land, whether immediately upon the acquisition of the conveyance or some considerable time thereafter. There is no other fact before us, outside of the deeds, indicative of her understanding or of her husband at the time the deeds were made.

The plaintiff offered to prove, as shown by bill of exception, by the defendant "in rebuttal" that "before she improved and occupied lot 3, block 2, etc., she was informed that there was an error in said deeds put in evidence by defendant, and that lots 1 and 2 conveyed to her in said deeds were only twenty-six feet wide each instead of sixty feet." This evidence was excluded by the court. This testimony would have been important only as bearing on the question of her good faith had that been an issue in the case. The plaintiff also proposed to show by Millspaugh "in rebuttal" that there was a mistake in the deeds from him to defendant "for lots 1 and 2, block 2, Millspaugh's addition to San Angelo, and that said lots were only twenty-six feet wide each instead of sixty feet each." This the court likewise on objection of defendant refused to allow plaintiff to do, but as we have seen these facts were amply established by other evidence before the court. Still we see no reason why the witness should not have been permitted to answer the question, and to have given in detail, if necessary, the mode of establishing the addition and marking and designating the lots and blocks therein, and whether this was done on the ground as well as upon the map. The evidence was intended, we presume, not to reform or correct the deed, but to aid in rightly interpreting the descriptions. The object was, or should have been, to ascertain the intention or understanding of the parties at the time of the execution of the deeds as well as the true meaning of the descriptions of the premises therein, read in the light of the surrounding circumstances as they really existed at the time. Any facts consistent with either of the descriptions contained in the deed that would show or tend to show that intention, or what land or how much was intended to be conveyed, would seem to be relevant to the issue in case of a latent ambiguity like the present, where the descriptions, though not uncertain on the face of the deeds, become so when attempted to be applied to the land conveyed as it really existed at the time. Sikes v. Shows, 74 Ala., 382; Truett v. Adams, 66 Cal., 218; Broom's L. M., 633. However, as neither of the appellant's bills of exception states what were the objections made to the introduction of the evidence offered by him, nor the grounds upon which it was excluded, we can not

revise the action of the District Court in these particulars, and therefore can not hold that any error was committed by the rulings indicated.

We are compelled, therefore, to determine the question presented by the assignment, to the effect that the court erred in construing the deeds to the defendant as conveying to her a frontage of one hundred and twenty feet in block No. 2, instead of only fifty-two feet as shown by the map on file in the county clerk's office, before she purchased the lands, by a consideration of the terms of the descriptions contained in the deeds and such other facts, *aliunde*, as we have already enumerated. The question is not as free from difficulty as it might appear at first glance. The difficulty is increased no little by the fact that Millspaugh was at the time the owner of lot 3, as well as lots Nos. 1 and 2, and therefore could have conveyed title to all the land covering the three lots, if such had been the intention. Upon mature reflection, however, we have reached the conclusion, under the facts as developed in the record, that in construing the descriptions contained in the deeds we ought to hold that the designation of the numbers of the lots and the block are more certain, and do more definitely indicate the identity of the land conveyed as well as the intention of the parties, than the call for the length and width of the lots. The latter description is evidently false as applied to the land conveyed, because in fact lots Nos. 1 and 2 of Millspaugh's addition were each only twenty-six feet wide, not sixty feet as stated in the deed. In the absence of competent proof to the contrary the parties must be presumed to have contracted with reference to the real condition of the property, or its "actual rightful state." 3 Washb. Real Prop., 384. It is true that on the face of the deeds no ambiguity or repugnancy in the description appears, but only when the descriptions are attempted to be applied to a thing described and conveyed is it shown otherwise to be in fact. The doubt or repugnancy in the description arises, therefore, whenever an effort is made to put the deeds in practical operation upon the subject matter of the trade. The legal principle upon which we mainly ground our conclusion as above indicated is explained by Broom in his work on legal maxims in the following language: "*Falsa demonstratio* may be defined to be an erroneous description of a person or thing in a written instrument." "As soon as there is an adequate and sufficient definition, with convenient certainty, of what is intended to pass by the particular instrument, a subsequent erroneous addition will not vitiate it." "The characteristics of cases within the principal maxim (*falsa demonstratio non nocet*) being that 'the description so far as it is *false* applies to *no subject* at all, and so far as it is true applies to one only.'" "'I agree,' observes Patterson J., 'to the doctrine that *falsa demonstratio non nocet*, but that is only where the words of the devise, exclusive of that *falsa demonstratio*, are sufficient of themselves to describe the property intended to be devised; reference being

had if necessary to the situation of the premises, to the names by which they have been known, or to other circumstances properly pointing to the meaning of the description in the will.' And again the maxim as to *falsa demonstratio*, says Lord Westbury, 'is applicable to a case where some subject matter is devised as a whole under a denomination, which is applicable to the entire land, and when the words of description that include and denote the entire subject matter are followed by words which are added on the principle of enumeration, but do not completely enumerate and exhaust all of the particulars which are comprehended and included within the antecedent universal or generic denomination. Then the ordinary principle and rule of law which is perfectly consistent with common sense and reason is this, that the entirety which has been expressly and definitely given shall not be prejudiced by an imperfect and inaccurate enumeration of the particulars of the specific gift.' " "The foregoing observations," continues Doctor Broom, "are in the main applicable not only to wills, but to other instruments; so that the description so far as it is false applies to no subject (in the contemplation of the parties) and, so far as it is true, it applies to one subject only, and the court in these cases rejects no words but those which are shown to have no application to any subject." (Pp. 629–631.)

As will appear from the parenthetical clause we have inserted above, we think that even if the false description could apply to one existent subject, yet one manifestly not in the minds of the parties making the contract, it would still be a false description of the thing conveyed, and should be rejected as superfluous if the subject matter of the contract is clearly described and identified by the other or preceding description in the instrument, construed if necessary in the light of the surrounding circumstances, disclosing the real condition of the promises and the intention of the parties. This is shown by the familiar example mentioned by Broom, that "a release of Whiteacre in Dale which I have by descent on part of my father" is valid, although the lessor did not have it by descent from his father as stated in the instrument; but the first description was true and identified the property; hence the other was rejected as untrue, considering the rightful state of the property. Id., 63, *et seq.*

In the present case, in the absence of any evidence outside of the terms of the deeds indicative of a contrary intention to what we believe to be shown by these instruments and the accompanying circumstances, we are forced to the conviction that Millspaugh conveyed to the defendants lots Nos. 1 and 2 in block No. 2, of the dimensions specified on the map of his said addition; and that the other description under the circumstances amounts to no more than a call for quantity in general terms, and does not identify the land conveyed at all. If we strike from the descriptions the numbers of the lots and block, then we defy any surveyor to find and identify the land in fact conveyed on

the ground. This particular land is rendered absolutely certain, how-ever, by reference to those numbers in connection with the map of the addition. Now, as we have before remarked, the deeds do not ex-pressly refer to that map and make it a part of the description, as is usual and as was done in most of the cases we have examined on the subject. Still we think that the parties must be supposed to have con-tracted with reference to the map as it was of record; and for the fur-ther reason, so far as the record discloses, that this was the only mode by which the lots and blocks in Millspaugh's addition were known and could be found and identified. In no other way than by the map could the description contained in the deeds be applied to the particular par-cels of land conveyed; hence the map may be looked to as a part of the description. Burbach v. Schweenler, 56 Miss., 386.

In apparent conflict with the construction we have put upon these descriptions is the case of Sikes v. Shows, 74 Alabama, *supra*, but a close scrutiny of the opinion in that case will, as we think, show that the decision of that eminent court was based mainly upon the extrane-ous circumstances, which clearly showed that the intention of the par-ties was to pass title to only "twenty feet front" of the lot, though the whole lot by the other description (giving correctly its number and that of the square of which it was a part) would have been conveyed. It is said in that case the description by "*metes* or *distances*" was the particular description and would control the other, which was general, but the de-cision was not rested on this ground. It may be conceded that if the descriptions are by "*means* and *bounds*" that would be specific and gener-ally control any general description, but we feel sure that the descriptions in hand are not of that certain character, and in fact could scarcely be considered as by "metes and bounds." There is no point of the com-pass mentioned, and no call to commence, run to, from, or end at any known or designated object, natural or artificial, and in fact is but an indefinite call for quantity which could never be ascertained without the aid of the other description. We do not think, therefore, that it ought to control in the absence of proof that such was the real intention of the parties. In harmony with this view is the decision of our Supreme Court in the case of Harkey v. Cain, 69 Texas, 149, where it was held that the call for a well known mill and gin house was more definite and certain than the call for "one hundred and fifty feet of land" without giving the number of the lot. But it may be observed that even a general description will prevail over a particular one when the latter is imper-fect and the former more certain of the two, or more surely indicates the true intention. 2 Dev. on Deeds, secs. 1039–1041. See also sec. 1044 as to the call for quantity.

In further support of our views we cite the following authorities: Haley v. Amestoy, 44 Cal., 132; Wade v. Deray, 50 Cal., 376; 3 Washb. on Real Prop., 385, *et seq.;* Id., sec. 39, p. 402. Adopting the concluding

language of the opinion of the court in Haley v. Amestoy, *supra,* to the facts of this case, we may say that the language of this description "indicates that the dominant idea in the mind of the grantor when the deeds were made was of lots Nos. 1 and 2 in block No. 2 as a whole and as they had really been established in his addition, and not the particular lines by which they might be described" otherwise.

It follows from what we have said that the appellant proved the superior title to lot No. 3 in block No. 2, and that the court below therefore erred in awarding that land to the defendant under her deeds to lots Nos. 1 and 2 in the same block. Ordinarily in such case the judgment would be reversed and rendered for appellant. It may be, however, that all the facts fully illustrating the true intention of the parties in making said deeds were not developed at the trial in the District Court. The plaintiff also claims rents, of which we could not now dispose. In any event it may be that the defendant upon another trial under proper allegations and proof can show that she is entitled under the well settled rules of law to compensation for valuable improvements erected in good faith upon lot No. 3, if they were in fact so erected.

We have therefore concluded, in order that full justice may be done between the parties on another trial, to recommend that the judgment be reversed and the cause remanded.

*Reversed and remanded.*

Adopted April 28, 1891.