PLUMMER et al. v. McLAIN et al. (No. 654.)

(Court of Civil Appeals of Texas. El Paso. Feb. 8, 1917. Rehearing Denied March 1, 1917.)

1. BOUNDARIES ☞3(3)—MONUMENTS AS CONTROLLING COURSES AND DISTANCES.

Where mining claims were actually surveyed on the ground and the four corners of each established, and from comparison of three of the four original corners made at the time the land was originally surveyed with the description in the patents when applied to the ground, a latent ambiguity arises, the monuments placed by the surveyor must control the erroneous calls in the patents.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 6–19.]

2. TRESPASS TO TRY TITLE ☞47(1)—CORRECTION OF PATENT.

Plaintiff was not required to resort to equity to correct errors in field notes before recovering in trespass to try title, but the erroneous calls made by mistake may be corrected so as to conform the location to the ground actually covered, marked, and identified when the locations were made.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. § 69.]

3. LIMITATION OF ACTIONS ☞19(2)—RECOVERY OF LAND—REFORMATION OF PATENT.

A prayer that field notes be corrected would not deprive the suit of its character as one for the recovery of real estate or cause the four-year statute of limitations to apply to such prayer.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. § 74.]

4. MINES AND MINERALS ☞43 — TRUE BOUNDARY LINES—NOTICE.

If the patents held by plaintiff embrace the lands in defendant's possession, although the patents contain erroneous calls for courses and distances, the defendants would be charged with notice of the true boundary lines.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 125–129.]

5. MINES AND MINERALS ☞44 — PATENTS—COLLATERAL ATTACK.

Plaintiff's claim to the land cannot be defeated by a collateral attack upon the validity of the application for grant of mineral land pursuant to which such patents were issued.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 130.]

Appeal from District Court, Culberson County; Dan M. Jackson, Judge.

Trespass to try title by Louis R. McLain and others against F. C. Plummer and others. Judgment for plaintiffs, and defendants appeal. Affirmed.

J. A. Harrison, of Beaumont, Joe Irby, of Van Horn, J. W. Parker, of Pecos, Jake Wolters, of Houston, and R. M. Reed and Hudspeth, Dale & Harper, all of El Paso, for appellants. Goldstein & Miller, Turney & Burges, and E. M. Whitaker, all of El Paso, for appellees.

WALTHALL, J. This is an action of trespass to try title, which was brought by appellees against appellants and in which judgment was rendered for the plaintiffs. The cause was tried on appellees' second amended original petition, in which they alleged that they own and have patents from the state of Texas to the three tracts of land in question, situated in Culberson county, describing each tract by metes and bounds, and designated, respectively, as the Kyle mining claim, the Dott mining claim and the Virginia mining claim, each containing about 160 acres of land. Appellees allege:

That "an error exists in some of the calls of the field notes of the particular description of said premises by metes and bounds, inasmuch

as that in the patent to the said Kyle mining claim said land herein described as first tract is described as follows: [Then follows the description of the three tracts as they are described in the patents: First tract: That certain 160 acres ·of land situated and being in Culberson county, Tex., and known as the Kyle mining claim, situated about 165 miles northeast of the county site of El Paso county, Tex., and described by metes and bounds as follows: Beginning at the S. W. corner of said Kyle mining claim, said corner being 36,142 vrs. E. and 7,165 vrs. S. from the S. W. corner of block 61, Tp. 2, T. & P. surveys, established by Paul McCombs, said beginning point being in the west line of block No. 45, public school land, as established on the ground; thence north along said line of said block 45, public school land 950.4 vrs. to stake and stone mound for N. W. corner of this survey; thence E. 950.4 vrs. to stake and rock mound for N. E. corner of this survey; thence S. 950.4 vrs. to rock mound for S. E. corner of this survey; thence W. 950.4 vrs. to place of beginning. Second tract: That certain other tract of land containing 160 acres, situated and being in the county of Culberson, state of Texas, and being known as the Dott mining claim, situated about 160 miles northeast of the county site of El Paso county, Tex., and described by metes and bounds as follows: Beginning at a stone mound the S. E. corner of the Dott mining claim, said corner being 32,723 vrs. E. and 9,401 vrs. S. from the S. W. corner of block 61, Tp. 2, T. & P. Ry. Co. surveys as established by Paul McCombs; thence N. 950.4 vrs. to stone mound for N. E. corner of this survey; thence W. 950.4 vrs. to stone mound for N. W. corner of this survey; thence S. 950.4 vrs. to a stake and rock mound for S. W. corner of this survey; thence E. 950.4 vrs. to place of beginning. Third tract: Also that certain other tract of land containing about 160 acres situated in Culberson county, Tex., and known as the Virginia mining claim, and particularly described as follows, to wit: Beginning at a cedar stake and rock mound the N. W. corner of the Virginia mining claim, said corner being 29,373 vrs. E. and 11,736 vrs. S. from the S. W. corner of block 61, Tp. 2, T. & P. Ry. survey as established by Paul McCombs; thence S. 9° 50' W. 844 vrs. to a 4x4 pine post and rock mound for the S. W. corner of this survey; thence S. 80° 10' E. 1,031 vrs. to a rock mound for S. E. corner of this survey; thence N. 9° 50' E. 844 vrs. to a stake and rock mound the N. E. corner of this survey; thence N. 80° 10' W. 1,031 vrs. to place of beginning—following which, appellees allege:] That said calls of the particular descriptions by metes and bounds in each of said patents are erroneous in describing said lands by metes and bounds as they are described in said patents, and in not locating and describing said lands as same are respectively described herein as 'first tract,' 'second tract,' and 'third tract,' and which errors in said several patents your petitioners show were errors of the surveyor, either in making out his field notes or in locating the true corners and boundaries of said three tracts of land hereinbefore described at the time same were surveyed for patents, and which corners of each of said tracts of land and boundaries thereof were located upon the ground when said surveys were made for said patents and at the time said patents were issued, and had been so located from, to wit, August 6, 1895, the date of application of petitioners' predecessor in titles, to wit, John B. Stone, to purchase said mining claims under Acts of 1895, and were of great notoriety, and your petitioners show that said patents vest in them, and it was the intention of the state of Texas to vest in them the title to said Kyle mining claim, to said Dott mining claim, and to said Virginia mining claim, which, as afore-

said, they allege had been surveyed out on the ground and monuments erected at each of the corners thereof at the date ,of the original application to purchase said land, and which corners and boundaries thereof and monuments designating the same are still intact, and have been ever since their location; that plaintiffs' predecessor in title, John B. Stone, caused each of said mining claims to be surveyed out under the act of 1895, and the field notes thereof, together with the plat thereof, to be filed in the general land office of the state of Texas, which surveys on the ground embrace the identical land described as 'first tract,' 'second tract,' and 'third tract' in this petition; and plaintiffs say that it was the intention of the state of Texas, as disclosed by said patents, to embrace, and each of said patents to them respectively for the said Kyle mining claim, the said Dott mining claim, and the said Virginia mining claim do embrace, said lands described herein as 'first tract,' 'second tract,' and 'third tract,' and that said error in said calls of said patents should be so corrected as to conform to said three several mining claims, as aforesaid, and herein particularly described."

Then follow the allegations that petitioners, under said patents, have not claimed or taken possession of any public lands other than said three claims, but have been in full possession of said three tracts from the time of their said application to purchase said three tracts; that appellants had full knowledge and are charged with notice of appellees' claims to said lands as described in the petition, and had said knowledge and notice long prior to the inception of any rights on their part to said land or any part thereof. Appellees alleged an unlawful ·entry by appellants, and that they were threatening and preparing to make excavations, borings, and drillings upon said land for minerals contained thereon and to remove same therefrom. Appellees prayed that they have judgment for the title and possession of said lands, for writs of restitution, for injunction, and that their patents be corrected as aforesaid, that appellants' claims to said lands be canceled and held for naught, and that the cloud thereby cast upon their title to said lands be removed, for costs, and for relief legal and equitable, general and special.

The appellants filed a general demurrer, general denial, a plea of not guilty, and especially pleaded that the plea for the correction of the field notes or calls in appellees' three patents were barred by the statute of limitation of four years.

The case was tried before the court without a jury. At the request of appellants, the court filed its findings of fact and conclusions of law. The findings of fact are as follows:

"I find that the land in controversy was patented by the· state of Texas to the plaintiffs, L. R. McLain, T. Stonewall Kyle, and St. Julien Ravenel, by three separate patents, all dated July 10, 1907, and that said plaintiffs have never parted with their title to said·land as vested in them by said three separate patents, and that they are now the owners in fee simple of the lands sued for herein and described in plaintiffs' second amended original peti-

tion, and as the same is described in the judgment entered in this case.

"(2) I find that by application dated August 6, 1895, John B. Stone applied to the state of Texas to purchase the land in controversy in this suit, the same being known as the Virginia, Dott, and Kyle mining claims, and that accompanying his said application was a description of said three tracts of land or mining claims, together with plat showing the location of the same made by A. H. Parker, county surveyor of El Paso county, Tex., who surveyed out said three mining claims for said Stone as required by law, and for his application to purchase same, together with his obligation to purchase the same, said application being made under the act of 24th Legislature and being S. B. No. 175, approved on the —— day of ——, 1895, and that accompanying said application the said John B. Stone made, delivered, and filed with the commissioner of the general land office his obligation to purchase said three mining claims, and that his said application and obligation was in all things in conformity with said act, and that the said John B. Stone and his assignees, the plaintiffs in this case, fully complied with said act and paid to the state of Texas the entire purchase price for said tracts of land, and I further find that at the time said mining claims were surveyed out by the said A. H. Parker, county surveyor of El Paso county, Tex., to wit, when said Stone made his application to purchase same, the same were actually surveyed out on the ground and the four corners of each of said tracts of land were actually established on the ground by rock and earth monuments, which in some cases were built around timber posts, and I further find as respects each of said mining claims that three of the original monuments as thus established by the said Parker still remain on the ground and in their location as made by the said Parker, and I find as to each of said tracts of land that three of the original monuments still exist on the ground and as made by the said Parker, and that said monuments as thus established and made by the said Parker were clearly identified, and that the ground as surveyed and so marked by the said Parker was and is the identical land claimed by plaintiffs in this suit and as described in their second amended original petition and as described in the judgment entered in this suit.

"(3) I find that the said John B. Stone conveyed to the plaintiffs in this suit long prior to the institution of this suit and long prior to the issuance of said three patents for said land all of his right, title, and interest in and to the land sued for herein.

"(4) I find that the plat of said land made by the said A. H. Parker, county surveyor of El Paso county, Tex., shows said three mining claims, and being the land sued for herein, to be located on the ground at the places claimed by plaintiffs in their second amended original petition filed in this case, and which is the identical land described in the judgment entered in this suit.

"(5) I find that it was the primary purpose of the state of Texas in issuing said three patents to the plaintiffs in this suit to extend title to them to the said three mining claims, to wit, the Kyle, Virginia, and Dott, which said three mining claims I find to be the identical land described in plaintiffs' second amended original petition and being the identical land adjudged to plaintiffs in this suit and described in the judgment entered in this suit, and that the patents did, in fact, embrace and vest title in plaintiffs to the identical lands adjudged to them by decree of this court.

"(6) I find from the evidence that the location of said three mining claims sued for herein, to wit, the Kyle, Dott, and Virginia, was actually located on the ground at the places claimed by plaintiffs in their second amended original petition, and being the identical land adjudged to them by the decree in this case, and that the location of the said three tracts of land was established by said Parker, who surveyed the same out for John B. Stone prior to the time the latter applied to purchase the same as aforesaid, and that the monuments of the four corners thereof were established on the ground, and that the locations of said three mining claims as thus made have been of great notoriety in that section of the country since they were so located by the said Parker, and that the land thus inclosed in said surveys was well known respectively as the Kyle, Dott, and Virginia mining claims.

"(7) I find that the northwest corner of the Kyle mining claim as the same was actually surveyed out and located on the ground and established on the ground by the said Parker is at a point between 750 and 800 varas less than the distance called for by the said Parker from the southwest corner of block No. 61 of the Texas & Pacific Railway Company survey in El Paso county, Tex., in his field notes accompanying the application of the said Stone to purchase said land, that is to say, that the distance between the northwest corner of the Kyle mining claim and the southwest corner of block 61, Texas & Pacific Railway Company survey, at that time in El Paso county, Tex., is between 750 and 800 varas less than the distance called for by the said Parker in his field notes of the said Kyle mining claim, and I also find that approximately the same discrepancy exists as to the distance between the northwest corner of the Dott mining claim and the southwest corner of block 61, Texas & Pacific Railway Company survey at that time in El Paso county, Tex., and now in Culberson county, Tex., but I find that in each case the land actually surveyed by the said Parker can be identified from the monuments established by him on the ground and called for by him in his field notes of said mining claims, and that the calls for said monuments is of greater weight, more certain, and entitled to more dignity than the call for distance in said two mining claims from the southwest corner of block 61 of said Texas & Pacific Railway Company survey now in Culberson county, Tex., but in El Paso county, Tex., at the time the lands in question were originally surveyed and at the time the same were patented.

"(8) I find that the lands in controversy in this suit as well as the southwest corner of block 61 of the Texas & Pacific Railway Company survey are now in Culberson county, Tex., but where in El Paso county, Tex., at the time the said John B. Stone applied to purchase the same and at the date the patents were issued on the same.

"(9) I find that plaintiffs' three separate patents to said three tracts of land actually embraced the land sued for by plaintiffs herein and the land described in the judgment entered in this suit.

"(10) I further find that all the defendants in this suit disclaimed in open court any interest or right in the Virginia mining claim.

"(11) I find that the defendants have filed upon the lands claimed by plaintiffs in this suit under the mineral act of 1913.

"(12) I find that defendants had notice of plaintiffs' claims to the land sued for herein at the time they filed upon the same.

"(13) I find that the defendants had knowledge of such facts which, if followed up with due diligence, would have given them notice that plaintiffs claimed the land sued for herein and described in the judgment entered in this suit.

"(14) I find that plaintiffs have paid all taxes due on the lands sued for herein from the date of their purchase of the same.

"(15) I find that the state of Texas has recognized plaintiffs' right to the land sued for

herein since the date of the original application of John B. Stone to purchase the same.

"(16) I find that the sections in block 45, public school lands, Culberson county, have never been surveyed out, established on the ground by any official survey by either the state or any county of the state."

Judgment was entered for appellees for the lands sued for, describing the said lands as first tract, second tract, and third tract, describing each by metes and bounds, and correcting the calls in each of the patents for distance from block 61, Texas & Pacific Railway Company's survey to conform to the description in the judgment and to conform to their location on .the ground, and made the temporary injunction ' theretofore granted permanent, restraining the removal of any of the minerals from said lands. Appellants excepted to the judgment and gave notice of appeal.

Appellants, in their first and additional assignment of error, insist that the court was in error in entering judgment correcting the field notes contained in the patents issued in 1907, and in correcting the field notes of the survey made in 1895, and contained in the application to purchase filed in the general land office, and in rendering judgment for appellee for lands described neither in the survey made in 1895, nor described in the patent issued in 1907, the appellants having no title in the fee to the land, but having a mere leasehold interest from the state, the state, the owner of the fee, not being a party to the suit. The proposition contended for under these assignments is that the court was without jurisdiction to enter judgment divesting the state of title to the lands described in patents, the state not being a party to the suit. The propositions under the assignment and the proposition under the additional assignment further assert that the suit is but an equitable action to correct an alleged mistake in the field notes which would be barred by four years. Appellants refer us to chapter 173, Gen. Laws 33d Leg. 1913, p. 409, relating to prospecting and developing minerals in public school lands of the state and a number of cases, as sustaining their contention. It will be noted that the appellees alleged and the trial court found that the lands in controversy were actually surveyed out on the ground at the places where the lands were adjudged to appellees, and that the original corner and monuments placed by the surveyor in locating the mining claims were identified by the surveyor and some of the witnesses, and that appellees' patents embraced such lands. Appellees' suit was to recover from appellants lands which they allege the state had granted to them and from which appellees had been ejected by the entry of appellants, and alleging error in the field notes in original applications for the purchases and in the patents, and asking that the errors be corrected so as to properly describe the lands as actually located on the ground. The facts having been determined by the trial court,· the court concluded as law that the call for distance in the patent was error and should be controlled by the identified corners and monuments, and corrected the calls in the field notes for distance so as to correspond with the pleadings and proof and entered judgment for the lands which the court found to have been originally actually located and embraced in the applications and patents. The applications to buy the mining claims were made in 1895, and the patents were issued in 1907. This suit was filed in 1916. Appellants' interest in the land sued for was a leasehold under the mineral act of 1913. The state was not made a party to the suit. If the court was without jurisdiction and power in this suit, as claimed by appellants, to correct the error in the field notes so as to conform the distance called for by the surveyor in locating said claims from the established corner of block 61, Texas & Pacific survey, as claimed by appellants, and appellees be required to accept the erroneous calls for distance, the trial court would be in error in having the call for distance to yield to established and identified monuments and corners, and the lands reached by the erroneous calls for distance would not be the lands applied for by appellants' predecessor in titles and upon which the monuments were found to have been actually placed, and appellees would not in any sense have complied with the laws regulating the sales of mineral lands of the state, and such lands would not be the lands actually bought by appellees and sold by the state.

[1] It is true that appellees did ask a correction of the distance call in the field notes, and the judgment recited that, "the calls in plaintiff's patent therefor being corrected accordingly," the suit is in trespass to try title, and the court found that it was the primary purpose of the state to patent the Kyle, Dott and Virginia mining claims, and that the lands sued for and adjudged to appellees are the lands embraced in appellees' patents. The state had sold the lands covered by the three mining claims, and one of the purposes of the suit was to locate and identify on the grounds the lands actually bought by appellees from the state. In Urquhart v. Burleson, 6 Tex. 502, the court said that it is an acknowledged rule in construing a grant that all of its parts must be taken together and supported if it can be done, and that, if this cannot be done, the principal object supposed to have been in the mind of the party and sought by him to be secured by obtaining the patent must prevail over all subordinate or secondary ones. In that case the court said that:

"It cannot be questioned but that the particular piece or parcel of land described was the primary object of the location. The lines and courses were subordinate to that object."

In that case the courses and distances were altogether inconsistent and entirely left the premises out of the survey and grant. We think that it could hardly be questioned in

this case but that the particular pieces of land upon which the croppings of sulphur were found and upon which the claims were located, staked out, worked, and purchased as mineral claims conclusively show the primary object of their locations. In Berry v. Wright, 14 Tex. 273, the court say:

"There really is no difficulty in understanding what land was intended to be conveyed. And that it should be capable of being ascertained and identified is all that is requisite to the validity of the conveyance. The falsity of a part of the description does not vitiate the deed, when from the whole the land conveyed may be certainly ascertained.".

In Jones v. Andrews, 62 Tex. 659, in a case of trespass to try title, where a point at issue was the proper location of the north boundary line of the survey, the court say that:

The jury "were not concluded by the recital in the patent as to where the survey was begun to establish and fix it at that point, if under the whole evidence they were satisfied * * * that the true line was elsewhere. * * * Mistakes of surveyors which are flagrant and controlling in the description of boundaries, and which follow the field notes into the patent, sometimes occur, and are not necessarily fatal to the patentee, but will be corrected according to the lines which were manifestly intended to be the true boundaries. See Urquhart v. Burleson, 6 Tex. 502. If the other calls of the survey were found to be the most material and certain, the jury were entitled to so treat them, and to disregard, if necessary, the north boundary line as called for in the field notes, and to determine the limits of the survey from such other calls."

It was held in the Jones v. Andrews Case that the corner of an adjoining survey, called for as a point from which the survey begins, does not necessarily control, and will yield to other satisfactory indicia as to where the true line was in fact run, and referred to Duren v. Presberry, 25 Tex. 512, in which case the facts showed that the call for the corner of another survey as a beginning corner was a mistake on the part of the surveyor, capable of correction by other objects, which were ascertained and corresponded with the calls in the grant.

The case of Thatcher v. Matthews, 101 Tex. 122, 105 S. W. 317, and the cases therein referred to, are in point, and we need not do more than refer to the case. The point at issue was the true location of the north boundary line of the Cartwright league. All lands south of that line belonged to defendants and all north to plaintiff. In that case the Supreme Court again announced the well-established rule that the footsteps of the surveyor must be followed, and referred to Stafford v. King, 30 Tex. 257, 94 Am. Dec. 304, as stating the correct rule that should govern in conflicting calls. The court further said that the order of dignity and control in conflicting calls are: (1) Natural objects; (2) artificial objects; and (3) course and distance —that is to say, calls for course and distance must, in case of conflict, yield to calls for natural. objects and to artificial objects.

It is the contention of the appellees that the patents, when properly construed, embrace the identical land adjudged .to them; that the primary purpose of the patents was to extend title to them to the three mining claims in question, and that the claims were actually surveyed out on the ground and the four corners of each established; that from three to four of the original corners made at the time the land was originally surveyed, and when the descriptions in the patents were applied to the ground, a latent ambiguity arose, in that the distance called for to the southwest corner of Texas & Pacific block 61 and the calls for the section corners of section 18, which had never been located on the ground, conflicted with the corners as established for the three mining claims; that the mining claims corners control the call for distance to the corner of said block 61 and the said unestablished section corners of section 18. The judgment made the distance call to block 61, and the distance call to the section corners of survey 18 yield to the established corners of the mining claims. When parol evidence was introduced, on the trial as to the said distance calls in the patents, appellees made the following admission:

"We admitted and now admit that if you give the distances called for in the Parker [the surveyor who made the original survey locating the mining claims] field notes, and in the location of the De Shazo (field notes) that you put the land 700 varas east of where we now contend it is. We admit this and always have."

The De Shazo corrected field notes are the field notes embraced in the patents.

[2] It is the contention of appellants in their brief that there is no irreconcilable conflict in any of the calls contained either in the field notes by Parker in the original applications to purchase the mining claims, nor in the De Shazo field notes in the patents, and that to locate the land as in the judgment it was necessary to ignore one call in each of the patents which call in the Kyle survey tract No. 1 is "743 varas east from the N. W. corner of section 18, block 45, public school lands."

Appellants' argument is that, unless in the field notes there are inconsistent calls, there is no ground for the trial court in trespass to try title to correct any error in the field notes, but that such correction must be, if at all, in a suit in equity, brought for that purpose, and in support of the proposition we are referred to Converse v. Langshaw, 81 Tex. 275, 16 S. W. 1031. The case does not support the proposition in its entirety. The court simply stated the application of the well-established rule in reference to the admissibility over objection of parol evidence to explain written contracts. The court was discussing the application of the rule stated in Urquhart v. Burleson, supra, and Anderson v. Stamps, 19 Tex. 460. In the latter case Judge Wheeler said that:

"The lines of the survey, as actually marked upon the ground, if they can be found and traced, will control course and distance. But

that is where the actual survey can be found and identified as the same called for in the grant. It is not meant that, where the grant calls for certain known and established natural or artificial monuments and boundaries, these may be controlled by parol proof of a survey entirely inconsistent, and repugnant to all the calls of the grant. * * * That would be virtually to destroy the written evidence of title, and substitute parol evidence in its stead."

The court, in the Converse v. Langshaw Case, referred to, sustained the statement of the rule in the above two cases, and said:

"But, when we attempt to apply these rules to the facts of the present case, we find a difficulty which arises from the meagre description in the defendant's patent."

And, after discussing the calls in the patents in the case then before the court, the court said:

"The testimony in this case showed clearly that the call for the corners of the Martin and of the railroad surveys [the two in conflict] were the result of a mistake, and the actual survey should govern."

There is nothing said in the opinion to the effect that, in order to have a correction made, a suit in equity must be brought against the grantor in the instrument sought to be corrected. In the Converse v. Langshaw Case it was claimed that the judgment for the land described in the answer was erroneous, because the description in the judgment was the same as that in the defendants' patent, and therefore the judgment leaves the question growing out of the conflicting calls undetermined. The court said that:

"Since this [the description of the land] could be ascertained only by resort to evidence outside of the record, the recital can hardly be held to be sufficient to aid the judgment. This is but another instance in which a suit is brought to settle a question of boundary growing out of conflicting calls in a grant in which the party claiming under such conveyance gives in his pleading precisely the same description which is found in the grant, without alleging which are the true calls, and without describing the land claimed by reference to such natural or artificial objects as will clearly identify it upon the ground. It is difficult to see that a judgment following the original description decides anything in such a case."

The court reformed the judgment so as to embody the actual survey as it was found to be on the ground.

We are unable to see why appellees should resort to a suit in equity to correct the field notes of the patents before they would be entitled to recover in this suit, since such correction of the field notes as alleged was not sought for the purpose of enlarging the patents, nor to correct or reform them, nor of applying the corrected description in the field notes to land other than that embraced in the patents, but was to aid in the rightly interpreting the descriptions. William Carlisle & Co. v. King et al., 122 S. W. 581; Sanborn v. Crowdus, 99 S. W. 444; Arambula v. Sullivan, 80 Tex. 615, 16 S. W. 436.

The patents evidence the sale of the lands sold and located on the ground as the Kyle mining claim, survey No. 286, the Dott mining claim, survey No. 285, and the Virginia mining claim, survey No. 284, and the patents will be construed to give effect to the intent expressed, and to cover the lands and only the lands actually sold and located on the ground.

Appellants further contend under the assignment that the four-year statute of limitation should apply. Appellees asserted title in themselves and sued to recover the lands claimed to be actually embraced in their title deeds. True, they asked a correction of distance calls, but for the purpose of having the corrected calls to cover the lands as actually located and identified by monuments and corners placed at the time the lands were located.

[3] We think we need not enter upon a discussion of limitation and stale demand, nor the action of trespass to try title and the character of title required to support such action. From the decisions of the courts examined by us, it is apparent that the question of limitation pleaded, depends upon the question of the nature of the suit brought. One may sue to recover land and in the same suit obtain additional affirmative relief necessary for his protection in and enjoyment of his title, and the fact that the additional feature is added to the suit would not deprive it of its character of one for the recovery of real estate. Day Land & Cattle Co. v. State, 68 Tex. 526, 4 S. W. 865; State v. Snyder, 66 Tex. 687, 18 S. W. 106; McCampbell v. Durst, 15 Tex. Civ. App. 522, 40 S. W. 315. In a suit of trespass to try title erroneous calls in the field notes improperly locating the mining claims at places other than where the lands were actually located, the erroneous calls, made by mistake, may be corrected so as to conform the location to the ground actually covered, marked, and identified when the locations were made, and a prayer that the field notes be so corrected would not have the effect to change the character and real purpose of the suit, but would be only incidental to the suit for the land. William Carlisle & Co. v. King, 122 S. W. 581.

[4] Under an assigned error it is insisted that the judgment is contrary to law, in that appellees seek to reform and correct the patents which they allege were intended to cover the lands sued for instead of the lands described in the patents, the patents having been issued in 1907, and the appellants having received the lands in 1915, appellants' rights having been acquired without notice of appellees' claims. It is a sufficient answer to this assignment that the court in the twelfth and thirteenth findings of facts found that appellants had notice and knowledge of appellees' claims to the lands at the time appellants filed upon the claims. If the patents embraced the lands sued for as found by the trial court in its first and sixth findings, appellants would be charged with notice of the true boundary lines. William Carlisle & Co. v. King, supra. The assign-

ment does not question the sufficiency of the evidence upon which the findings were made.

[5] It is claimed that the original applications under the mining act of 1895 under which the mining claims were filed show on their faces to be applications for purposes not authorized by the act, the applications alleging that the tracts of land contain nonmetallic brimstone and do not contain any of the valuable metals, and for that reason the applications are nullities and confer no rights.

We think the appellees' mining claims could hardly be defeated by a collateral attack in this proceeding. The assignment is overruled.

In discussing the cases referred to under the first assignment, the propositions presented under appellants' second, third, and fourth grounds of error have been considered, and we need not review them in order. There is no merit in the contention that appellees cannot have the erroneous calls for distance corrected in their suit at this time. The pleading, the evidence, and the findings of the trial court all show that the lands applied for and located on the ground and identified by the established corners of the original survey are the lands embraced in the judgment.

We find no reversible error, and the case is affirmed.