**FULFORD et al. v. HEATH.**

No. 5878.

Court of Civil Appeals of Texas. Amarillo.

May 24, 1948.

Rehearing Denied June 21, 1948.

Vickers & Vickers, of Lubbock, for appellants.

Nelson & McCleskey, of Lubbock, for appellee.

PITTS, Chief Justice.

This suit is in the nature of trespass to try title but in reality it resolves itself into a boundary suit filed by appellee, E. D. Heath, against appellants, Walter C. Ful-

ford and wife, Della M. Fulford, and Billy J. Fulford, to establish a common boundary line between lots 4 and 5, block 60, of Crestlawn Addition to the City of Lubbock, Lubbock County. Appellants answered with a plea of not guilty and claimed title by limitation to a strip of land 5.7 feet wide and 131 feet long adjacent to both lots with a common boundary line separating them. The sole controversy presented on appeal is the boundary line and the question of ownership of the said strip of land.

The case was tried on September 5, 1947, before the trial court without a jury and judgment was rendered establishing the boundary line and awarding the strip of land to appellee from which judgment appellants perfected an appeal. Appellants presented four points of error which can be reduced to two controlling issues, namely, whether or not the evidence supports the findings of the trial court in establishing the boundary line and whether or not appellants established their claims of limitation.

In support of its judgment and made a part thereof the trial court filed its findings of fact and conclusions of law, the material parts of which are in effect as follows: the Crestlawn Addition to the City of Lubbock is a subdivision of the McCrummen Second Addition to the said city; the McCrummen Second Addition was platted and laid out by Hub Guinn, then county surveyor, who later pointed out to A. L. Harris the northeast corner of the McCrummen Second Addition; the Crestlawn Addition consists of about 80 lots, the average approximate size of each being 50 feet wide and 130 feet long, within the bounds of which are three streets, namely, 23rd, 24th and 25th, and three avenues, namely, T, U and V, each 50 feet wide; the houses and improvements situated on most of the lots in the said addition are located upon the ground in accordance with and with reference to the actual location of the streets and avenues upon the ground; a plat of the said addition as drawn by A. L. Harris was filed for record on December 16, 1944, but prior to the filing of the said plat the City of Lubbock had caused the streets and avenues on the ground covered later by the addition to be located, laid out,

marked and graded upon the ground; the said streets and avenues have since continuously existed and still exist upon the ground in the locations originally fixed by the city; the Crestlawn Addition as situated upon the ground and the streets and avenues therein that were laid out, graded and paved by the city and used by the public are not situated upon the ground according to the plat drawn by A. L. Harris; the said streets and avenues are actually situated upon the ground 7.5 feet west and 5.7 feet north of the lines fixed by the A. L. Harris plat; appellants purchased lot 4 and appellee purchased lot 5, both in block 60 of said addition and adjacent to each other, without reference to or without relying upon any record or any plat of the said addition but they purchased the respective lots relying upon the location of the same on the ground as they were situated, related to and fit into the pattern of the tier of lots 1 through 6, inclusive, in block 60 of the addition each fronting east on Avenue U and situated between 23rd and 24th Streets and each lot being 50 feet in width and approximately 130 feet long; the description given in the respective deeds conveying the respective lots in question to appellants and appellee made no reference to any plat of the said addition; the distance between the center of 23rd Street and the center of 24th Street across block 60 in the said addition is 350 feet, each of the six lots being 50 feet wide and 25 feet on each end of the lot being used as one-half the width of the street adjacent thereto thus making a total of 350 feet; the east-west boundary line separating lots 4 and 5 is situated 125 feet north of the center line of 24th Street and 225 feet south of the center line of 23rd Street leaving each of the respective lots 50 feet in width. The trial court concluded as a matter of law that the said line so fixed should be the boundary line separating the two lots in question.

Appellants first contend that the trial court should have rendered judgment for them based upon three of its fourteen findings made but in determining whether or not the trial court's findings support its judgment we must consider all of its findings and not a part of them to the exclusion of all others.

The matter of determining whether or not the evidence supports the findings of the trial court is governed by several well established rules, namely: (1) To test the sufficiency of the evidence to determine if it will support the trial court's findings, we must give credence only to the evidence and circumstances favorable to the findings and disregard all evidence and circumstances to the contrary. (2) The findings of the trial court where there is no jury will not be disturbed on appeal where there is some evidence of probative force to support the findings, even though the evidence is conflicting and the Court of Civil Appeals might have reached a different conclusion. (3) A trial court's findings will be upheld unless they are manifestly erroneous and they will be overruled only when they are without any evidence of probative force to support them or where they are so against the great weight and preponderance of the evidence as to be manifestly wrong. These rules are fully stated with many authorities cited in support of them in the case of Boston Ins. Co. v. Rainwater, Tex.Civ.App., 197 S.W.2d 118.

The record reveals a plat or map prepared by witness, W. R. Couch, a state land surveyor, showing all of block 60, Crestlawn Addition, divided into six lots of equal width and showing 23rd and 24th Streets and Avenue U with all of the lines, boundaries and distances the same as those found by the trial court hereinabove set out. We find from Couch's testimony that his map or plat correctly represented conditions as they existed on August 30, 1947. We find from the testimony of Sylvan Sanders that he had been a surveyor in and around Lubbock since 1920; that he was the original surveyor who laid out the streets and avenues of Crestlawn Addition in 1922 or 1923 prior to its dedication and that they occupy the same positions on the ground where they were originally located. The record reveals that in December, 1924, Crestlawn Addition was dedicated by a deed executed by M. E. Simmons and wife, Mary Simmons, and a plat thereof was made by A. L. Harris and it was filed for record. Neither the dedication deed nor the plat makes any reference to any fixed point or monument up-

on the ground other than the streets and avenues shown in the plat including 23rd and 24th Streets and Avenue U. Appellant Walter C. Fulford testified that he bought lot 4, block 60, Crestlawn Addition, in August, 1943, and his deed to the same called for such lot and block in the said addition without describing the same by metes and bounds; that the lot was 50 feet wide; that he did not look at an abstract covering the lot or a plat of the addition when he was considering buying the lot; that he did not rely upon any plat of the addition; that he did not have the title examined and did not examine the dedication deed himself; that he did not talk to any prior owner of the lot about it other than Mr. Wofford, the man from whom he bought it; that he looked at the lot on the ground and observed that the streets were laid out and marked including 23rd and 24th Streets and Avenue U and purchased the same as a result of his inspection of it on the ground. Jess Wofford testified that he formerly owned lot 4, sold it later to appellants and that it was only 50 feet wide. The record reveals that no reference was made to a plat or map or dedication in the deed by which appellants obtained title to the lot nor by which Jess Wofford and three other immediate predecessors in title obtained their title to the said lot. It was admitted that H. G. (Hub) Guinn originally surveyed McCrummen Second Addition out of which Crestlawn Addition was thereafter subdivided. It was likewise admitted that in former years a stone set in the ground had marked the northeast corner of McCrummen Second Addition. The dedication deed of McCrummen Second Addition introduced by appellants referred to the beginning point as being a stone set in the ground at the northeast corner of survey 9 but no other fixed points or monuments were mentioned therein. According to the record the said stone is no longer there and was not there when Crestlawn was dedicated or when the streets of Crestlawn were surveyed and laid out on the ground. Appellants contend that A. L. Harris testified "in substance" that H. G. (Hub) Guinn pointed out to him (A. L. Harris) the said stone monument locating the northeast corner of

said addition at which point A. L. Harris began when he surveyed Crestlawn Addition. Appellants refer us to pages 90 to 92 of the Statement of Facts for such testimony. But we do not find that A. L. Harris so testified "in substance" or otherwise. The Statement of Facts reveals on pages 90 to 94 that A. L. Harris testified concerning markers as follows:

"Q. Did you ever talk to Hub Guinn and have him show you on the ground any of the markers that he used on McCrummen Second Addition?

(Objection was made on the ground that it was hearsay but the same was overruled).

"A. I was deputy under Hub Guinn when he first began and he wanted his deputy to follow legal boundaries, so he pointed out what he considered legal boundaries among which was instructions of McCrummen First Addition and McCrummen Second Addition.

(Objection was made that the answer was not responsive to the question and the objection was sustained).

"Q. Did you ever go out on the ground to the location of the northeast corner of McCrummen Second Addition with Hub Guinn? A. Yes, Sir.

"Q. What, if anything, did he point out as the northeast corner? A. He pointed out to me an iron pipe.

"Q. What was the dimensions of that iron pipe at that time? A. It was probably an inch, or an inch and a quarter galvanized iron pipe.

"Q. Did or not Hub Guinn ever point out any other markers that he made on the ground in his survey of the McCrummen Second to you? A. Yes, numbers of them.

"Q. Did he or not point out any markers that he put on the east line of McCrummen Second to you? A. Yes.

"Q. What were those markers and where?

(Objections were made, much discussion was had by the court and counsel and the question was never answered).

"Q. Do you or not know whether Hub Guinn is now alive or not? A. I think that he is dead.

"Q. How old was he when he left? A. He was quite an old man. I think he is dead. The last I knew of him he got in an automobile wreck and was dangerously ill and I don't know whether he made it or not."

We do not find any testimony given by A. L. Harris to the effect that H. G. (Hub) Guinn pointed out to him a stone set in the ground at the northeast corner of McCrummen Second Addition as the beginning point for his survey. A. L. Harris did testify that Hub Guinn pointed out to him an iron pipe locating the northeast corner of McCrummen Second Addition. He further testified that he placed a two inch pipe as a marker at the place pointed out to him on the ground by Hub Guinn as the northeast corner of McCrummen Second Addition but he made no reference to any stone monument having been pointed out to him and he testified that he was certain the City of Lubbock never did use the iron pipe he placed as a marker of the McCrummen Second Addition in establishing the streets in Crestlawn Addition. On cross-examination counsel sought at length without having any success to have A. L. Harris testify if there was any way to take the map and plat of Crestlawn Addition filed for record by him and determine the location of any of the lots of Crestlawn Addition upon the ground. Obviously the lots could not be located upon the ground by the use of the said map or plat. A. L. Harris further testified that the map and plat he made of Crestlawn Addition showed six lots each 50 feet wide in block 60 and that 23rd and 24th Streets were each 50 feet wide. He further testified in effect that it probably would not have changed the size of the lots any if his map and plat had been used in laying out the streets of the Crestlawn Addition but it would only have placed them in a little different position some "6 or 7 feet west and 5 or 6 feet north of where they are actually located."

The record reveals that the stone monument that was once placed as a marker at the northeast corner of McCrummen Second Addition has long ago been removed and that its exact location on the ground before it was moved is a matter of speculation about which competent surveyors

have differed. The record reveals that H. G. (Hub) Guinn platted and laid out McCrummen Second Addition and that he pointed out the northeast corner of the same to A. L. Harris. The trial court so found. But the record does not disclose that there was a stone there at the time the corner was pointed out to A. L. Harris by Guinn and the trial court did not make any such finding. We can assume that A. L. Harris thought he was placing his marker at the exact place pointed out to him by Guinn but the record does not establish the exact point on the ground where the stone was located. Therefore Harris could easily have missed the exact place pointed out to him a few feet just as other surveyors who ran all the lines only a few feet from those run by Harris could likewise have missed the beginning point a few feet. There is only a few feet difference in the claims of the respective parties to this suit but it means much to them.

■ The evidence supports the finding of the trial court to the effect that the streets, avenues, blocks and lots here involved were laid out and put into use upon the ground prior to the making of the plat and the dedication of Crestlawn Addition and that they have continuously remained in the same locations upon the ground where they were originally located. There were no markers or monuments designated in the dedication of Crestlawn Addition other than the streets and avenues therein named including 23rd and 24th Streets which had been previously located upon the ground. Appellants did not rely upon plats, maps or dedication when they bought lot 4. They observed the ground, the streets that were marked and purchased the lot from what they observed on the ground. For that reason appellants are bound by the markers, lines and corners that existed on the ground. City of Dallas v. McMurray, Tex.Civ.App., 282 S.W. 296; Arambula v. Sullivan, 80 Tex. 615, 16 S.W. 436. It appears from the record that the trial court was justified in finding that the lots in question must be located upon the ground from the position of the streets and avenues located there in 1922 or 1923 and later named in the dedication map of Crestlawn Addition.

■ The deeds of conveyances to the parties do not attempt to describe the lots in question by metes and bounds but describe them by lot and block number in Crestlawn Addition. The record does not show how nor where the lots in question could be located on the ground except as they were situated with reference to the streets and avenues there marked on the ground and shown in the map of dedication. It has been held that streets, roads and highways marked and existing upon the ground, used and recognized for a long period of time may be used as monuments upon the ground from which boundaries may be established. Such is certainly true in a case such as this where no better monuments have been established and where the dedicators themselves apparently intended to recognize such streets as monuments upon the ground since the streets were named in the map of dedication and they made no other provision in the dedication for locating the lots and blocks therein shown. Our position that streets may be recognized as monuments upon the ground from which boundaries may be established is supported by the following authorities: Gilcrease v. Anderson, Tex. Civ.App., 22 S.W.2d 980; Davis v. Monroe, Tex.Civ.App., 289 S.W. 460.

■ Appellee complains that the testimony of A. L. Harris admitted over his objection to the effect that H. G. (Hub) Guinn pointed out to him the northeast corner of McCrummen Second Addition was "hearsay" evidence and not admissible since it was not shown that Guinn was dead and his testimony was not available. A. L. Harris testified that he thought Guinn was dead but that statement alone probably does not meet the requirements of the rule in such cases. But, be that as it may, it is our opinion that the evidence and the law support the findings and conclusions of the trial court in establishing the boundary line as it did between the two lots in question and appellants' points to the contrary are overruled.

Appellants complain that the trial court erred in awarding the strip of land in question to appellee because the boundary line between the two lots, as claimed by appellants, had been recognized as the true

boundary line for approximately 20 years by the predecessors in title of both appellee and appellants and that appellants and their predecessors in title had acquired title to the strip of land in question by reason of the ten year statute of limitations. Vernon's Ann.Civ.St. art. 5510.

The record reveals that the common source of title to lots 4 and 5, block 60, Crestlawn Addition, was in M. E. Simmons and wife, Mary S. Simmons, who sold lot 5 to E. T. Bramlett on December 15, 1927. Bramlett owned it a short time and sold it to Higginbotham-Bartlett Company which owned it for a short time and sold it to Jeff Roberts who owned it about nine years and sold it to Alva Akers who owned it about ten years and sold it to appellee, E. D. Heath.

Simmons and wife sold lot 4 to Miss Effie Irene Dunn on January 10, 1925. She kept it for a short time and sold it to Mrs. Lula B. Abbott who died October 30, 1932. The Abbott heirs deeded the lot to E. G. Abbott on September 1, 1937. E. G. Abbott owned the lot about three months and deeded it to H. L. Bobo who owned it about eighteen months and deeded it to Mrs. Berta Payne who owned it about ten months and deeded it to J. W. Clark who owned it nine months and deeded it to O. W. English who owned it about three months and deeded it to Jess R. Wofford who owned it two and one-half years and deeded it to appellants on August 18, 1943, since which time they have owned it and lived on it.

The record reveals that appellants claimed the boundary line between lots 4 and 5 was marked by a row of trees and a fence and that the same was located 5.7 feet south of the line fixed by the trial court as the boundary line. According to appellants' claims their lot 4 would be 55.7 feet wide and appellee's lot 5 would be only 44.3 feet wide. The record reveals that there was a row of Chinese elm trees in the vicinity of the east-west boundary line between lots 4 and 5 and toward the front of the same and there was a fence running east and west in the vicinity of the boundary line between the lots toward the rear of the same.

Appellants contend that the evidence shows a continuous recognition by the owners of both lots that the said row of Chinese elm trees and the said fence marked the boundary line between the two lots. The law is well settled that in order to establish such a boundary line by agreement, acquiescence or recognition, the burden was upon appellants to prove that the parties or owners on both sides of that line must have agreed to, acquiesced in or recognized the line as a boundary line.

We find from the testimony of Jeff Roberts and Alva Akers, who were the only owners of lot 5 from December 16, 1927, to August 3, 1946, when appellee bought it, that there was no understanding or agreement between the owners of the two lots that the row of trees and the fence marked the boundary line between the two lots; we likewise find from their testimony that the row of trees and fence were not intended by the owners of the two lots to mark the boundary line; nor were they recognized by the owners as such. On the contrary, it was understood that the boundary line was north of the row of trees and fence. Their testimony was not disputed by any witness, but it was corroborated by the witness, Jess Wofford, who owned lot 4 from March 12, 1941, to August 18, 1943, when he sold it to appellants.

Since Mrs. Lula Abbott bought lot 4 on July 2, 1926, there have been eight different owners of the said lot. Only four of them testified and one of them was appellant Walter C. Fulford. The four who testified, other than Walter C. Fulford, had each owned the lot for only a short period of time in recent years and certainly they could not speak for the other four who did not testify. E. G. Abbott owned the said lot 4 from September 30, 1937, to December 7, 1937. He testified that his mother thought when she lived on lot 4 that the fence marked the south boundary line but nothing was said by him to H. L. Bobo about where the boundary line was when he sold the lot to Bobo. He said his mother always told him the lot was 50 feet wide and he told Bobo the lot was 50 feet wide when he sold it to him. H. L. Bobo, who owned the said lot from December 7, 1937,

to May 17, 1939, testified that nothing was said to him about the boundaries when he bought the lot but he thought the fence was the line. Jess Wofford, who owned the lot from March 12, 1941, to August 18, 1943, on which date he sold it to appellants, testified that he knew the trees and the fence were on lot 5 and that they did not mark the boundary line. Appellant Walter C. Fulford testified that he claimed that the row of trees and the fence marked his south boundary line.

It is presumed that the trial court's findings supported its judgment and that its findings were adverse to appellants' claims here made. It is our opinion that the evidence does not support appellants' claims that the row of trees and the fence had been previously recognized by the owners of the two lots as the boundary line between them. It appears that the evidence shows the contrary to have been true.

The elements essential to title by limitation have been so well settled in adjudicated cases that an extended discussion of them will not be given here. A person claiming title to land by virtue of ten year adverse possession has the burden of proving ten consecutive years of peaceable adverse possession and that he and his predecessors in title cultivated, used or enjoyed the same during that period of time and the proof must be clear and satisfactory. Moore v. Wooten, Tex.Comm.App., 280 S.W. 742; West v. Mora, Tex.Civ. App., 138 S.W.2d 600. Presumptions to establish such a claim will not be indulged but such a claimant has the burden of proving every necessary or essential fact, in connection with his possession and claim, which go to make up or give him title by limitation. Durham v. Houston Oil Co. of Texas, Tex.Com.App., 222 S.W. 161; Thomas v. Ash, Tex.Civ.App., 199 S.W. 670; Barte v. W. T. Carter & Bro., Tex. Civ.App., 100 S.W.2d 378. Article 5515, Vernon's Annotated Civil Statutes, provide that " 'Adverse possession' is an actual and visible appropriation of the land, commenced and continued under a claim of right inconsistent with and hostile to the claim of another." The Commission of Appeals held in the case of W. T. Carter & Bro. v. Holmes, 131 Tex. 365, 113 S.W.2d 1225, 1226, that "In order to maintain the defense under the ten years' statute of limitation, the defendant must prove 'actual, exclusive, continuous, visible, and notorious possession, distinct and hostile, for the full period of ten years.' 2 Tex. Jur. p. 12." The court held in the case of Monroe v. Lyons, Tex.Civ.App., 189 S.W. 2d 90, 91, that "The essential elements upon which a title by limitation under the ten-year statute can be perfected are use, claim and possession." It has likewise been many times held that a claimant by adverse possession for ten years must have entered upon the land and occupied it with the intention of claiming it as his own or have held it for himself and such must continue to be the nature of his possession. Houston Oil Co. of Texas v. Jones, 109 Tex. 89, 198 S.W. 290.

The evidence reveals that those who have previously owned the lots in question have been friendly neighbors and that there was no thought of anyone about a claim of limitation by adverse possession until recent months prior to the controversy that arose between the parties to this suit. Certainly there was no evidence of open, continuous, exclusive possession for a period of ten consecutive years that was distinct, hostile and adverse to others. Thompson v. Moor, Tex.Com.App., 14 S.W. 2d 803; Stewart v. Luhning, 134 Tex. 23, 131 S.W.2d 824.

It is our opinion that appellants have failed to establish their claim that they and their predecessors in title had acquired title to the strip of land in question by reason of the ten years statute of limitations and the points to the contrary are overruled.

We have carefully examined the record and the briefs and have not found any reversible error. The judgment of the trial court is therefore affirmed.