WILLIAM CARLISLE & COMPANY v. E. C. KING ET AL.

No. 2106.    Decided December 14, 1910.

**1.—Record of Title—Description of Land.**

A recorded deed is notice of the grantor's conveyance of land incorrectly described therein where the correct description may be arrived at by fair construction.    (P. 624.)

**2.—Same—Deed—Description of Land—Boundaries—Construction.**

See deed purporting to convey 160 acres out of a larger survey, which by mistake in calls (for a beginning point at the S. E. instead of the S. W. corner of the survey, and for a course to run east from a certain point instead of west) would not close, nor include any land in such survey, in which the errors are held capable of correction by construction, so as to make certain the land intended to be conveyed.    (Pp. 623–626.)

**3.—Record of Title—Burned Records—Refiling—Notice.**

Where records of deeds have been destroyed, an instrument recorded therein and refiled for record more than four years after their destruction (Rev. Stats., art. 4600) imparts notice by record to a subsequent purchaser from the date of refiling, only, not from that of the original record.    The sufficiency of the record notice must then be tested by article 4607, Revised Statutes, as though the deed had never before been recorded.    (P. 627.)

**4.—Same—Filing—Notice—Index.**

By article 4607, Revised Statutes, a subsequent purchaser is charged with notice of a deed by reason of the filing of same with the clerk for record, it remaining in his hands for that purpose, though the clerk has failed to record it.    Notice thereof to the purchaser while so in the clerk's possession, before its actual record, is provided for by article 4605, Revised Statutes, which requires the clerk, upon the filing of such instrument, to enter it upon the proper index; and by article 4660 such purchaser is further protected by making the clerk liable for damages caused by his failure to index.    (Pp. 626–628.)

**5.—Same—Payment of Recording Fees.**

No provision of the statute requires one depositing a deed for record to pay the recording fees before the clerk is required to file and index the instrument.    The effect of such filing and indexing as notice to purchasers is not lost by reason of the fact that the deed remained for a long time unrecorded in the hands of the clerk because the party filing it failed to pay the fees for recording.    (Pp. 627, 628.)

**6.—Same—Cases Discussed.**

Throckmorton v. Price, 28 Texas, 606, followed, and held not overruled by Harrison v. Taylor, 47 Texas, 454; the latter case distinguished as one in which the deed, imperfectly recorded, did not remain in the hands of the clerk. (P. 627.)

Error to the Court of Civil Appeals for the Fourth District, in an appeal from Trinity County.

King and others sued the Carlisle Company for the recovery of land. Plaintiffs recovered and defendant appealed, and on affirmance obtained writ of error.

*Hill & Hill* and *J. P. Stephenson* and *R. C. Duff,* for plaintiff in error.—The deed of Chessher and wife to Burns, of date March 19, 1861, is on its face void for want of description. This deed shows a patent ambiguity and can not be aided by other evidence than the deed itself. Coker v. Roberts, 71 Texas, 601, 602; Kingston v. Pickins, 46 Texas, 101; Linney v. Wood, 66 Texas, 27; Norris v. Hunt, 51 Texas, 609; Roberts v. Short, 1 Texas, 377; Donehoo v. Johnson, 24 So., 888, 890; 29 Am. & Eng. Ency. Law (2d ed.), pp. 866, 867; 1 Greenleaf Evidence, secs. 300, 301; 2 Wharton's Evidence, sec. 956; 1 Ency. of Evidence, p. 827, note 3; 2 Cowen & Hill's, and Edwards' Notes to Phillips on Evidence, p. 746; 1 Ency. of Evidence, p. 827 (II); Chinoweth v. Haskell, 3 Pet., 92.

Appellants by special exception raised the issue that the relief sought by correction of the deed could not be allowed, because inhibited by the statute of frauds. The court overruled this special exception, which was error. Rev. Stats., arts. 624, 2543 (4); Watson v. Baker, 71 Texas, 747, 748; Regan v. Milby, 21 Texas Civ. App., 21; Browne on Statute of Frauds (5th ed.), sec. 385; Parsons on Contracts (7th ed.), pp. 13, 14; Pomeroy on Contract (2d ed.), sec. 90; 29 Am. & Eng. Ency. Law (2d ed.), pp. 866, 867.

The facts appearing by appellees' first amended original petition, appellants, by special exceptions, raised the issue that appellees' right of action was a stale demand; that they had slept on their rights thirty years, and were barred by the statute of limitation of ten years, therefore, the deed could not now be reformed. The trial court overruled appellees' special exceptions, which was error. Rev. Stats., art. 3360; Mathews v. Benevides, 18 Texas Civ. App., 475; Boon v. Chamberlain, 82 Texas, 480; Rowe v. Horton, 65 Texas, 90; Walet v. Haskins, 68 Texas, 420; Waters v. East, 23 Texas Civ. App., 412; Hanner v. Moulton, 138 U. S., 495.

The erroneous and false description shown by the face of a deed can only be disregarded where there remains enough to identify the land intended to be conveyed by the deed itself, otherwise the remedy is an action to reform the deed. The deed of Chessher and wife to Burns, tested by the above universal rule of construction, is, on its face, fatally defective. 6 Ballard's Law of Real Property, p. 205; Ferrell v. Ferrell, 53 W. Va., 515; Heller v. Cohen, 154 N. Y., 299; Southern Bldg. & Loan Assn. v. Rodgers, 104 Tenn., 437; 9 Ballard's Law of Real Property, p. 140; Strayer v. Dickerson, 205 Ill., 257; 11 Ballard's Law of Real Property, sec. 531, p. 752; Hawkins

v. Blair, 36 So., 246; Muldoon v. Deline, 135 N. Y., 153; Brewster on Conveyancing, sec. 85.

Appellants, prior to 1906, purchased the land in this suit claimed by appellees, and paid the full market value for it, without actual knowledge or notice of appellees' claim, or of the deeds through which they claim title. The Chessher deed to Burns, filed by appellees for record in 1892, not recorded, and lost or mislaid in the office until 1906, when it was found by appellees' attorney after search made by several, and then filed by appellees' attorney of that date, and recorded, was not constructive notice until filed for record in 1906. Appellees and their counsel, during the time between 1892 and 1906, made no effort to get the deed, pay the recording fee, and have it recorded or refiled for record. The constructive notice of the filing for record of this deed only took effect when it was found and refiled in 1906. The filing of this deed in 1892 was not constructive notice to appellants when they purchased the land in 1900 and 1902. Dean v. Gibson, 34 Texas Civ. App., 508; Taylor v. Harrison, 47 Texas, 458; McLouth v. Hurt, 51 Texas, 120; Weber v. Moss, 3 Texas Civ. App., 13; Hart v. Patterson, 17 Texas Civ. App., 591; Gulf, C. & S. F. Ry. Co. v. Gill, 86 Texas, 286; Stinnett v. House, 1 Texas U. C., 488.

The field notes, as set out and contained in the deed from Chessher and wife to Burns, do not include any part of the Chessher survey of 320 acres of land; the record of such a deed, with such description, though recorded at the proper time, would not have been constructive notice to appellants when they purchased from the Craddocks the 158 acres, the east half of the Chessher survey, and when they purchased from John W. Chessher 160 acres, the other half. Gulf, C. & S. F. Ry. Co. v. Gill, 86 Texas, 286; Carter v. Hawkins, 62 Texas, 395; Wright v. Lancaster, 48 Texas, 256; McLouth v. Hurt, 51 Texas, 120; Simmons v. Hutchinson, 81 Miss., 351; 11 Ballard's Law of Real Property, p. 221.

There is no evidence in the record to show the intention of the grantors, Chessher and wife, to enable the court to reform the deed and substitute a different set of field notes from those contained in the Chessher deed. Rev. Stats., art. 3360; Mathews v. Benevides, 18 Texas Civ. App., 475; Boon v. Chamberlain, 82 Texas, 480; Rowe v. Horton, 65 Texas, 90; Walet v. Haskins, 68 Texas, 420; Waters v. East, 23 Texas Civ. App., 412; Coker v. Roberts, 71 Texas, 601, 602; Kingston v. Pickens, 46 Texas, 101; Linney v. Wood, 66 Texas, 27; Roberts v. Short, 1 Texas, 377; Donehoo v. Johnson, 24 So., 888, 890; 29 Am. & Eng. Ency. Law (2d ed.), pp. 866, 867.

*Stevenson & Stevenson* and *John R. Arnold,* for defendants in error.—Where a mistake is so obvious, the field notes should be held to correct themselves. Sanger v. Roberts, 92 Texas, 317; Gallup v. Flood, 46 Texas Civ. App., 644; Mansel v. Castles, 93 Texas, 415-6. Calls in field notes may be reversed to give effect to a deed. Swenson v. Willsford, 84 Texas, 424; Miles v. Sherwood, 84 Texas, 485; Ayers v. Harris, 64 Texas, 299. The patent and abutting surveys may be looked to to determine the land erroneously described in the

deed. Huff v. Webb, 64 Texas, 285. An older line, trees and even a "stake" are fixed objects in locative calls. Thacher v. Mathews, 101 Texas, 122. By Revised Statutes, art. 4607, every such instrument of writing shall be considered as recorded from the time it was deposited for record. By Rev. Stats., art. 4642, when delivered to the clerk of the proper court to be recorded, shall take effect and be valid as to all subsequent purchasers for valuable consideration without notice. By Rev. Stats., arts. 625 and 4640, filed with the clerk to be recorded as required by law. Filed, delivered and deposited have same meaning. 6 Texas, 540; 14 Texas, 339; 41 Texas, 552; 60 Texas, 494; 89 Texas, 41. When a deed is filed or delivered to a clerk for record the owner has discharged his duty as to giving notice according to law. Throckmorton v. Price, 28 Texas, 608; Kennard v. Mabry, 78 Texas, 156; Land Co. v. Chisholm, 71 Texas, 527; Lignoski v. Crooker, 86 Texas, 327.

MR. JUSTICE BROWN delivered the opinion of the court.

Defendants in error instituted this suit in the District Court of Trinity County against William Carlisle & Company to recover 160 acres of land, being a part of a 320-acre survey patented by the State of Texas to J. S. H. Chessher on the 25th day of July, 1860. The field notes of the said 320-acre survey read as follows: "Beginning at the N. E. corner of the J. Hickman survey a stake, a pine bears N. 40 deg. E. 10 varas, another S. 53 deg. W. 5 varas. Thence S. 15 deg. E. 1120 varas to Hickman's S. E. corner. Thence S. 75 deg. W. with South boundary line of said survey 80 varas to the N. W. corner of Sarah Fry survey a stake, pine bears N. 36 deg. W. 6.2 varas, another N. 67 deg. E. 10 varas. Thence S. 15 deg. E. with Fry East line at 1200 varas N. W. corner of a survey for Spencer Adams. Thence N. 75 deg. E. with the N. boundary line of said Adams survey 1175 varas a stake for S. E. corner a Black Oak bears S. 14 varas, a pine bears N. 5 W. 2½ varas. Thence N. 536 varas, the S. line of S. Whitmore survey a post oak bears S. 68 deg. W. 10½ varas. Thence W. with said Whitmore's survey 353 varas the S. W. corner of said survey a stake from which a pine bears N. 9 deg. E. 8.6 varas, another bears N. 55 W. 72 varas. Thence North 1344 varas to J. Y. Curry's South line. . . . Thence West on Curry's S. line 300 varas to his S. W. corner. Thence N. with same 264 varas. . . . Thence W. 310 varas to beginning."

The original survey was irregular in form, which will be shown by the following plot:

On the 25th day of July, 1860, J. S. A. Chessher and wife made a deed to George Burns for 160 acres out of the 320-acre survey patented to the said Chessher, field notes to which are as follows:

"Beginning at the S. E. corner of a 320-acre tract of land, granted to James S. A. Chessher by virtue of his preemption certificate on the 25th day of July, 1860, by Sam Houston, Governor of said State, and Francis M. White, Commissioner of General Land Office. The patent to said 320 acres is marked No. 65, Vol. 31. Thence N. 75 deg. E. with the N. B. line of Spencer Adams survey 1175 varas to a stake for the S. E. corner, a Black Oak bears S. 14 varas, a Pine

bears N. 5 deg. W. 2½ varas. Thence North 536 varas the S. line of S. Whitmire's survey, a Post Oak bears S. 68 deg. W. 10 varas. Thence West with said Whitmire's survey 353 varas the S. W. corner of said survey, a stake from which a Pine bears N. 9 deg. E. 86 varas, another bears N. 55 deg. W. 72 varas. Thence N. a sufficient distance so by running East to East boundary of said survey of 320 acres, and thence South 15 deg. E. to the place of beginning, so as to include 160 acres of land."

The filing of the deed for record from J. S. A. Chessher and wife to George Burns gave notice to subsequent purchasers of just what was embraced in the terms of the deed by fair construction. The rule of construction of deeds is "that where there is an evident mistake in the calls the court must, if practicable, find out from the deed itself and correct errors so as to give effect to the deed." Poitevent v. Scarbrough, 103 Texas, 111; Mansel v. Castles, 93 Texas, 414; Coffey v. Hendricks, 66 Texas, 676.

We will first see if there is an apparent mistake in the field notes under examination. The first call is to begin at the S. E. corner of the Chessher 320-acre survey and to run east with the north line of the Adams survey 1175 varas "for the S. E. corner." Looking at the map, which is copied above, we see readily that there is a mistake in this call for the beginning corner, because to begin at the S. E. corner of the Chessher survey and run east would depart entirely from that survey, and by the subsequent calls, no part of that

survey could possibly be embraced, neither would the survey close. From the field notes it also appears that the north line of the Adams survey and the south line of the Chessher survey are coincident, therefore the call to run with the Adams survey can not be maintained if we observe the call for the beginning corner at the S. E. corner of the Chessher, because that is the termination of the north line of the Adams, and, as stated above, to run east, would leave that line entirely and run the line upon a different survey. From this it is apparent that there is a mistake in the call for the beginning corner as given in the deed to Burns. Recurring to the map and the field notes as given in the deed, the second call is to run the east end of the first line N. 536 varas to the south line of the Whitmire survey; thence west 353 varas to the southwest corner of that survey. If the calls be observed, the points reached would not be on the south line of the Whitmire survey. If we reverse the calls, running from the southwest corner of the Whitmire east to the point where that line is intersected by the east line of the Chessher, and thence running south the distance called for, we reach the S. E. corner of the Chessher; being the northeast corner of the Adams, and, reversing the call from that point and running west 1175 varas with the Adams north line, we arrive at the southwest corner of the Chessher survey, which must be the beginning corner of the tract intended to be conveyed by Chessher to Burns. From the southwest corner of the Whitmire survey the call is to run north so far as that, running thence east to the east line of the Chessher survey, and "thence S. 15 deg. E. to the place of beginning would embrace 160 acres of land." There is here an evident mistake in the call to run "east to the east line," because the point from which it is called to run north would be on the east line of the Chessher survey and to run east from that point would put the line upon the Whitmire survey, so that following that course there could not possibly be embraced any part of the Chessher survey. The west line of the Chessher approaching its southwest corner runs S. 15 deg. E., therefore, if a line be drawn from any point on the east line of the said survey to a point on the west line between the Chessher and the Fry survey, the call to reach the beginning corner would necessarily be S. 15 deg. E., which would correspond with that call in the deed to Burns. The mistake is so manifest that it precludes argument—it is disclosed by the terms of the instrument itself. The fact to be determined is the point on the west line of the Chessher survey from which a line may be projected eastward to the east line of the same survey so as to include 160 acres of land. This is a matter of calculation and of easy ascertainment, so that wherever the point may be ascertained on the west line of the Chessher survey, from which a line running east would intersect the east line of the same survey so as to include 160 acres the survey would close in accordance with the terms of the field notes and be entirely consistent with all of the surrounding circumstances.

It was the manifest purpose of Chessher to convey to Burns 160 acres out of the southern portion of the original survey granted to him. The deed to Burns gives a description of the patent under

which he acquired the land and gives such calls, corners and distances as indicate clearly to a casual observer that the land sought to be conveyed lies within the limits of the Chessher survey and in the southern portion thereof. This purpose must be observed in the construction of the deed and it can not be effectuated in any other manner than by correcting the palpable errors which appear in the calls as expressed in that instrument. We believe that there is no difficulty in reconciling all of these calls, thereby giving a true and correct expression of the intent and purpose of the makers of this instrument. We therefore hold that the deed upon its face is not void, but that it is sufficient in its description to convey the land as claimed by the defendants in error and to give notice to subsequent purchasers of the locality thereof.

Plaintiffs in error claim to be innocent purchasers for valuable consideration, because the deed from Chessher and wife to Burns was not on record in Trinity County at the time that the said plaintiffs in error purchased the land. The facts bearing upon this question are, briefly stated, as follows:

The deed from Chessher and wife to Burns was on record in Trinity County on March 29, 1862, at which date Chessher and wife made a deed to the east half of the said 320 acres to Nancy Williams. In the fall of 1872 the deed records of Trinity County were destroyed by fire and on the 22d day of July, 1881, a deed from Chessher and wife to Nancy Williams was filed for record in Trinity County and was recorded. The deed to Burns from Chessher and wife was filed for record in the county clerk's office in Trinity County on the 20th of August, 1892, but the fee for recording same was not paid and the deed was not recorded, remaining, however, in the office. Nancy Williams conveyed the east half of the Chessher survey to H. F. Craddock on January 10, 1872, by deed which was filed for record September 3, 1881, reciting a consideration of $300. The surviving wife and heirs of Craddock sold and conveyed the land to the plaintiffs on March 9, 1900, receiving $3.50 per acre in payment for the land, which was its fair value. That deed was recorded in due time. On January 15, 1906, the deed from Chessher and wife to George Burns was refiled in the clerk's office of Trinity County and was recorded on that date. Defendants in error claim title by regular chain of transfers from George Burns.

In the year 1879 the Legislature enacted a law of which the following is a part:

"Art. 4600. When any of the original papers mentioned in the first article of this chapter may have been saved or preserved from loss, the record of said originals having been lost, destroyed or carried away, the same may be recorded again, and this last registration shall have force and effect from the filing for original registration; provided, said originals are recorded within four years next after such loss, destruction or removal of the records; and certified copies from any record authorized by the provisions of this title to be made may be received in evidence in any of the courts of this State in the same manner and with like effect as certified copies of the original record."

The deed from Chessher to Burns was not filed for record within four years from the enactment of that law, consequently, its former record ceased to be notice to subsequent purchasers and its priority over the title of the plaintiff in error depends upon whether the filing of it in 1892 was a compliance with the requirements of this article of the statute:

"Art. 4607. Every such instrument of writing shall be considered as recorded from the time it was deposited for record; and the recorder shall certify under his hand and seal of office to every such instrument of writing so recorded, the hour, day, month and year when he recorded it, and the book and page or pages in which it is recorded; and when recorded deliver the same to the party entitled thereto or to his order."

The failure to file for the second record within the time specified by the statute left the deed as to filing and registration subject to article 4607, copied above, and it must be tested by the same requirements as if it had been executed since the enactment of 1879 or had never been recorded before 1892.

In Throckmorton v. Price, 28 Texas, 606, the facts were similar to this case, differing mainly in the length of time which elapsed between the filing of the instrument and the subsequent purchase. In that case a deed of trust had been filed for record, but had not been recorded. After the date of the filing of the deed, but before the record the maker of the deed of trust executed a deed conveying the land to another party for a valuable consideration, who had no actual notice of the existence of the deed of trust. The Supreme Court in an opinion delivered by Chief Justice Moore held that the purchaser was charged with notice of the existence of the deed by reason of the filing of the same in the office of the county clerk, notwithstanding the failure of the clerk to enter it upon the deed records of the county. This case has been followed and approved in any number of cases since that time upon questions of similar import. Fitch v. Boyer, 51 Texas, 349; Land Co. v. Chisholm, 71 Texas, 527.

Plaintiff in error cites the case of Harrison v. Taylor, 47 Texas, 454, in which Judge Moore wrote the opinion. It is claimed by counsel for the plaintiff in error that the latter case is in conflict with the decision in Throckmorton v. Price, but a comparison of the cases will show that in this the learned counsel is mistaken. As reported it does not appear in Harrison v. Taylor whether the deed in question, after the imperfect record was made, was left in the files of the office of the clerk of the county or not and we feel sure that Judge Moore would not have overlooked so important a fact in preparing the opinion if it had appeared in the record. Joseph Bledsoe, known to the writer to have been one of the most accurate and learned lawyers of his time, represented Harrison in that case, and if such an important fact to his client had existed he surely would have made it appear in the record of the trial and would have availed himself of it in defense of his client's interest. We know of no case which is in conflict with the decision of Throckmorton v. Price.

At first view of the question it would appear that the long time

elapsing between the filing of the deed and the purchase by the plaintiff in error in this case would indicate negligence on the part of the person who claimed the land under the deed from Burns in failing to see to the recording of his deed properly in due time. When, however, we turn to article 4605 of the Revised Statutes, we find that the Legislature provided for just such conditions as existed here by the enactment of that section in the following words:

"Art. 4605. When any instrument of writing authorized by law to be recorded shall be deposited in the recorder's office for record, if the same shall be acknowledged or proved in the manner prescribed by law for record, the recorder shall enter in a book to be provided for that purpose, in alphabetical order, the names of the parties and date and nature thereof and the time of delivery for record; and shall give to the person depositing the same, if required, a receipt specifying the particulars thereof."

Thus it will be seen that the duty is imposed upon the clerk upon the filing of each instrument for record to place it upon a memorandum book, in alphabetical order, so that any person who desired to ascertain whether there was a conveyance of, or an incumbrance upon, any tract of land in the county could readily ascertain that fact by reference to the memorandum book. But the Legislature did not stop there in its provision for the protection of subsequent purchasers, but enacted article 4660, whereby it provided that "if any recorder shall neglect or refuse to provide and keep in his office such indexes as required by law, he shall forfeit and pay any sum not exceeding five hundred dollars," and be liable to the party injured by such neglect for all damages sustained.

We find no provision of the statute which requires that a party who deposits an instrument for record in the clerk's office of the county shall pay the recording fees before the record is made. Under the provision of the statute which we have before cited, we believe that Throckmorton v. Price was properly decided and that the filing of the instrument in this case operated as notice to the subsequent purchaser, notwithstanding the fact that a great length of time had elapsed between the filing of the instrument and the purchase. If the clerk did his duty and placed the instrument upon the memorandum book in alphabetical order, then it was no less accessible to the subsequent purchaser in 1906 than it was in the year 1892, and if he failed to keep that memorandum as required by law, he was guilty of negligence for which the defendants in error are not responsible. We are of opinion that there was no error in the judgment of the Court of Civil Appeals, therefore the judgment of that court is affirmed.

*Affirmed.*