**WYMAN et al. v. HARRIS et al.**
No. 4584.

Court of Civil Appeals of Texas. Beaumont.
May 6, 1949.

Rehearing Denied June 15, 1949.

Fountain, Cox & Gaines, Houston, Geo. B. Darden, Conroe, for appellants.

W. C. McClain, Conroe, Pitts & Liles, Conroe, Green & Taylor, Conroe, for appellees.

WALKER, Justice.

This is an action in Trespass to Try Title to land in the P. H. Herndon Survey, Abstract 256, in Montgomery County. It was brought to identify the tract of land described in a prior judgment of the trial court which that court rendered on November 7, 1947, in cause 19211.

Plaintiffs in the present cause are Mrs. Wyman and certain oil and gas lessees of hers. Mrs. Wyman was sole plaintiff in prior cause 19211, and the parties to the present action have agreed that she is the common source of the title to the land involved in the present suit. Mrs. Wyman's title to said land was derived by inheritance from her mother, Mrs. Mary E. Finch, whose sole heir she was. Mrs. Finch died some 40 years prior to the trial of the present action.

Defendants in the present cause are Mike C. Harris and the Atlantic Refining Company. Atlantic was a party defendant to prior cause 19211, claiming then and in the present cause an oil and gas leasehold interest under other defendants to said prior cause 19211. The other defendants to prior cause 19211 are not parties to the present action. Defendant Harris was not a party to prior cause 19211, but has acquired title to land which he claims to be the tract described in the prior judgment. Whether he has done so, or whether the deed under which he holds describes a tract which lies east of the tract described in said prior judgment, except as it overlaps an infinitesimal segment of the northeast corner of said latter tract, is a question which we need not and do not decide on the present appeal. Defendant Harris has disclaimed title to all land in the Herndon Survey other than the tract described in the prior judgment and in the deed under which he holds.

Defendant Harris filed action over against his grantors on their warranty. The identity and location of the tract they have conveyed to him will doubtless be a question to be determined upon the trial of that cross action.

It seems evident that prior cause 19211 was filed subsequent to the survey made by J. M. Hall, Jr., during February, 1939. The present action was filed subsequent to November 7, 1947, the date of the prior judgment.

The pleadings in prior cause 19211 and the Special Issues submitted in that cause, as copied in the judgment, indicate that said cause arose out of a dispute concerning the location of the boundary between the eastern and western halves of the Herndon Survey. This Survey was partitioned on March 18, 1904, by H. D. Cowan, and Mrs. Mary E. Finch, Plaintiff Wyman's mother. To effect this partition, H. D. Cowan conveyed the eastern half of the survey to Mrs. Finch, and Mrs. Finch and her husband conveyed the western half of the survey to Cowan, each tract being described by metes and bounds in considerable detail. According to these deeds, the Herndon Survey is bounded on the west by the San Jacinto River, and it runs eastwardly on the course North 75 degrees East. The North line is 2800 varas long; the South line is 4792 varas long, and the eastern boundary, which runs at right angles to the north and south boundaries, is 2842 varas long. The area of each half of the survey is stated to be "468 acres, more or less", and the dividing line is described as running on the course South 62 deg. 30′ East from the middle of the north

boundary to the middle of the south bound-ary. This description is made up from recitations in the two partition deeds just mentioned. The proof adduced on the trial of the present action locates the Herndon Survey on the ground in the same general position as that shown by these deeds, but shows that the boundaries of the survey run on courses slightly different from those stated in said deeds, and that these deeds did not correctly state the length of the boundaries.

However, cause 19211 was more than a boundary dispute. (H. D. Cowan was a party defendant to this prior suit, and the other defendants seem to have claimed un-der him). Title to that segment of the Herndon Survey, which was described in the judgment rendered in said cause, was independently put in issue. We note, for in-stance, that the parties pleaded limitation titles to this tract, and that the jury found, in effect, that the defendants in prior cause 19211 had acquired a limitation title to at least some of said tract under the 10 year statute.

Pursuant to the verdict of the jury, the trial court rendered judgment in prior cause 19211 in behalf of Defendants, from which we quote in part as follows:

"It is therefore ordered, adjudged and de-creed by the court that the plaintiff, Mrs. Mary F. Wyman, a feme sole, take nothing as against the defendants, H. D. Cowan, Frank Etter, W. Kuykendall, J. L. Pitts, J. Robert Liles, Mrs. T. D. Hagerman, and The Atlantic Refining Company, in her suit for the title and possession of the following described tract of land, to-wit:

"Being 22 acres of land, more or less, out of the P. H. Herndon Survey, Abstract No. 256, in Montgomery County, Texas;

"Beginning on the South line of said Herndon Survey and the North line of the John McDillon Survey, and running North 62 deg. 30 min. West with the old division line between Mrs. Mary F. Wyman and Frank Etter to a point in the North line of the P. H. Herndon Survey, 1400 vrs. from the river to this point, according to a map and plat of the west side of the P. H. Herndon Survey placed of record by H. D. Cowan, May 9, 1904, and recorded in Vol.

33, page 47, Deed Records of Montgomery County, Texas;

"Thence North 75 E. 201 vrs. to a stake;

"Thence South about 75 E. 1900 vrs. to a point in the South line of the P. H. Herndon Survey;

"Thence west 70 vrs. on the south line of the P. H. Herndon Survey, to the place of beginning, containing twenty-two (22) acres of land, more or less."

This description was copied from Mrs. Wyman's petition. The petition contained another descriptive element immediately following the description quoted, which the judgment omits; this omitted allegation read: "The above described and foregoing land is the same land that is fenced and is now being used by the Defendant, W. Kuykendall." This omission is the only variance between the description plead by Mrs. Wyman and that used in the trial court's judgment to identify the land in suit in prior cause 19211.

The judgment in prior cause 19211 also quoted the special issues submitted to the jury, and since the language of at least one of these, namely, Issue 6, is of some signi-ficance here, we copy these Issues and the jury's answers thereto, as follows:

"(No. 1) Do you find from a preponder-ance of the evidence that in the year 1904 R. D. Blackshear ran a line from the south line of the P. H. Herndon Survey to the north line of said survey, marking and identifying said line upon the ground at the time of running said line? You will answer this question 'Yes' or 'No'. (An-swered: No)

"(Issues 2 to 6, inclusive, following Issue 1 were conditioned upon an affirmative an-swer to Issue 1, and were not answered by the jury)

"(No. 2) Do you find from a preponder-ance of the evidence that the defendant H. D. Cowan from the year 1904 observed and recognized said line as the dividing line be-tween the east and west halves of the P. H. Herndon Survey? (Unanswered)

"(No. 3) Do you find from a preponder-ance of the evidence that the defendant T. D. Hagerman from the time that he pur-chased an undivided one-fourth interest in

the west half of the P. H. Herndon Survey observed and recognized said line as the dividing line between the east and west halves of said survey? (Unanswered)

"(No. 4) Do you find from a preponderance of the evidence that the defendant Frank M. L. Etter, from the time that he purchased an undivided one-half interest in the west half of the P. H. Herndon Survey observed and recognized said line as the dividing line between the east and west halves of said survey? (Unanswered).

"(No. 5) Do you find from a preponderance of the evidence that the defendant W. Kuykendall from the time that he purchased an undivided one-eighth interest in the west half of the P. H. Herndon Survey observed and recognized said line as the dividing line between the east and west halves of said survey? (Unanswered)

"(No. 6), Do you find from a preponderance of the evidence that the *twenty two acres of land* out of the P. H. Herndon Survey sued for herein is situated on the east half of said survey?

"(The concluding Issue, No. 7, was answered)

"(No. 7) Do you find from a preponderance of the evidence that the defendants in this case and those under whom they hold and whose estates they claim to have had and held peaceable and adverse possession of the land and premises enclosed by the defendants continuously for a period of ten years prior to the filing of this suit, which was filed on the 6th day of March, 1947, using, cultivating or enjoying the same continuously, openly, notoriously and adversely during the same period of time? (Answered: Yes)"

Subsequent to the rendition of the aforesaid judgment in prior cause 19211, Defendant Mike C. Harris acquired title to the land he claims in the present action. It is unnecessary to state the details of the chain of title under which Defendant Harris claims, or any other matter concerning the deed or deeds constituting that chain of title. Defendant Harris paid $1500 for this tract of land:

The present action, which was cause 19354 in the trial court, was tried to the court, sitting without a jury. The proof showed the following matters in addition to such as have already been stated:

Plaintiffs proved the findings of two surveyors, namely, J. M. Hall, Jr., and J. P. Waddill, who had surveyed various boundaries of significance in the present action. Hall's survey was made in February, 1939, and that of Waddill was made in July, 1948, some months after the rendition of judgment in prior cause 19211. Mr. Hall was dead when the present cause was tried. Mr. Waddill, who was the County Surveyor of Montgomery County, testified.

Both Hall and Waddill found and surveyed the line which is referred to in the prior judgment as "the old division line between Mrs. Mary F. Wyman and Frank Etter." (Actually, Waddill only rediscovered Hall's prior findings and monuments). Hall's findings show that this line was well marked in February, 1939, and that Hall added certain permanent monuments to further define it. Mrs. Wyman seems to have regarded this line as the true division line between the two tracts into which Cowan and Mrs. Finch divided the Herndon Survey in 1904. Both surveyors found the termini of this line to be on the southern and northern boundaries of the Herndon Survey, and found that this line extended from the southern to the northern boundary of the Herndon Survey on the course North 62 deg. 30' West. These findings, of course, are consistent with the description appearing in the judgment rendered in prior cause 19211. Hall found this line to be 2022.8 varas long, and Waddill found it to be 2023.1 varas long. The judgment in prior cause 19211 does not state the length of this line. The parties have agreed that the line found by Hall and Wyman is the Wyman/Etter division line referred to in the judgment. The Cowan plat referred to in the judgment is not in proof, but this is of no significance here.

Both Hall and Waddill surveyed various boundaries of the Herndon Survey. According to them, the northern and southern boundaries of the Herndon Survey are parallel and run from the San Jacinto river on the course North 74 deg. 15' East. This course varies 45' from the course given these boundaries in the judgment rendered in prior cause 19211 and in the Cowan-

Finch partition deeds. The judgment rendered in prior cause 19211 does not call for the northern terminus of "the old division line between Mrs. Wyman and Frank Etter" to be on the northern Herndon boundary; but the matters heretofore stated necessarily show that it was intended so to be. Both Hall and Waddill put the north end of this Wyman/Etter line nearer the San Jacinto river than did the judgment rendered in prior cause 19211 or the Cowan-Finch partition deeds. Hall states the distance as 1226.8 varas and Waddill, as 1208 varas, while the judgment and the partition deeds state this distance as 1400 varas. We infer from Waddill's testimony that he thought his difference with Hall resulted from their selection of different points on the river bank at which to end their surveys, a matter of convenience. We think the variance noted between the surveyors on the one hand and the judgment and partition deeds on the other hand is immaterial; as stated, the parties agreed that the surveyors had found the Wyman/Etter division line.

Waddill did not completely survey the Herndon northern and southern boundaries east of the Wyman/Etter division line, but Hall did. Hall found the distance from the northern end of the Wyman/Etter line line to the Herndon northeast corner to be 1601.7 varas; this distance exceeds that stated in Cowan's 1904 deed to Mrs. Finch (1400 varas) by 201.7 varas. Hall found the eastern boundary of the Herndon survey to run from the Herndon northeast corner on the course South 75 deg. 15′ East a distance of 2737.8 varas; this course varies 45′ from the course South 75 deg. East given this boundary in Cowan's deed to Mrs. Finch, and this distance is 104.2 varas short of the 2842 vara distance for which that deed calls. As heretofore stated, Hall found the southern boundary of the Herndon survey to run parallel to the northern boundary, and thus on a course 45′ different from that assigned this boundary in the prior judgment and in the partition deeds, and he found the distance from the Herndon southeast corner to the southern terminus of the Wyman/Etter line to be 2492.8 varas; this distance exceeds that stated in Cowan's deed

to Mrs. Finch by 96.8 varas. The area within these boundaries, east of the Wyman/Etter division line, Hall computed to be 503.52 acres; from Hall's survey figures, Waddill calculated this area to be 495.37 acres. Cowan's deed to Mrs. Finch estimates this area at "468 acres, more or less".

Waddill surveyed the Herndon northern and southern boundaries west of the Wyman/Etter line, and so did Hall, according to his plat. Waddill found the distance along the Herndon southern boundary from the southern end of the Wyman/Etter line to the San Jacinto river to be 2410.75 varas. Hall's plat states it as 2417.7 varas. Mrs. Finch's partition deed to Cowan states it as 2396 varas. We have heretofore stated the surveyors' findings concerning the Herndon boundary westward from the northern end of the Wyman/Etter line to the river.

Waddill did not compute the acreage lying between the Wyman/Etter division line and the river, but Hall's plat states it as 406.54 acres. Mrs. Finch's partition deed to Cowan states this acreage as "468 acres, more or less," the same area stated in Cowan's partition deed to Mrs. Finch.

According to these figures the Wyman/Etter division line did not equitably divide the Herndon Survey, and the difference in area of the two tracts separated by said division line probably accounts for the dispute which culminated in the filing of prior cause 19211.

The proof adduced in the present cause also shows the existence of a fence east of the Wyman/Etter line which extends across the Herndon Survey, from the northern to the southern boundaries of that survey. From the northern and southern termini of this fence, other fences ran westward along the northern and southern boundaries of the Herndon Survey to the San Jacinto river. The proof does not show who erected this cross fence. Mrs. Wyman testified that she did not; that "They were working on it when I went up there and found it; told them they were wrong." Waddill testified that he found no evidence of a cross fence west of this fence, and Mrs. Wyman testified, in effect,

that during the long period of her ownership, some 40 years, there had been no cross fence east of said fence.

Waddill surveyed the cross fence found by him. He found that the northern end of this fence was in the northern boundary of the Herndon survey 173.35 varas east of the northern end of the Wyman/Etter line. His plat shows this fence; according to this plat, the fence follows an irregular course between the northern and southern boundaries of the Herndon survey. From its northern end it extends into the survey a short distance on a course about at a right angle to the northern Herndon boundary, and then runs along the course South 59 deg. 22' East to a point on the Wyman/Etter line about 40 varas north of the southern end of that line; there it crosses the Wyman/Etter line on a course at about a right angle to the Herndon Southern boundary and terminates on that boundary of the survey. Waddill also found, and platted, the fences along the northern and southern boundaries of the Herndon survey, to which we have already referred. It is not entirely clear to us that Hall's plat should be interpreted as showing this cross fence; his field notes do not refer to this fence but his plat shows a line east of the Wyman/Etter line which may be the same fence to which Waddill referred.

Waddill searched for evidence that the eastern line of the tract described in the judgment rendered in prior cause 19211 had been surveyed. He found nothing to indicate that any survey had been made of this line, and we conclude that it never was surveyed on the ground.

The present parties' theories of how the description of the tract awarded defendants in the judgments rendered in prior cause 19211 should be applied to the ground depended (and yet depend) upon where the eastern line of that tract should be located. Plaintiffs have brought forward two contentions which their pleadings raised in the trial court. They say first that the cross fence east of the Wyman/Etter division line was the eastern boundary of the tract litigated in prior cause 19211 and was the eastern boundary of the tract described in the judgment. This contention seems founded upon the theory that the parties to prior cause 19211 only litigated the title to land which the defendants to that cause had under fence, and that ambiguities incidental to the field notes in said judgment, arising either from matter of record in prior cause 19211 or from matters revealed by the surveyors, entitle them to go fully into the record and the proof made in cause 19211 to show that, in fact, this actually was the only land litigated in prior cause 19211 and thus, the only land to which Mrs. Wyman lost title in that cause. But, Plaintiffs say, if this cross fence is not to be taken for the eastern boundary of the tract awarded defendants in prior cause 19211, then the eastern line of said tract should be a straight line drawn from the northeastern corner called for in said judgment, to-wit, a point 201 varas eastward of the northern end of the Wyman/Etter line, straight across the Herndon survey to a point on the Herndon southern boundary 70 varas eastward of the southern end of the Wyman/Etter line, for which the judgment does call in describing the southern line of the tract awarded defendants in said prior cause 19211.

Defendants say here, as they said in the trial court, that the eastern line of the tract described in the judgment rendered in prior cause 19211, should be constructed on the course South 75 deg. East from the northeast corner of said tract as same is identified in said judgment on across the Herndon survey to the southern boundary of said survey.

All three of these contentions result in some variances from the description set out in the judgment rendered in prior cause 19211, as will appear from our statement of Waddill's computations, discussed hereinafter. Waddill's computations were fully stated in his testimony, and were expressed upon a plat which he made. However, Plaintiffs' second contention, alternative to their claim of the cross fence for the eastern boundary of the judgment tract, departs less from said judgment description than do either of the other two.

At the conclusion of the trial, the trial court adopted the construction propounded by the defendants, and rendered judgment in behalf of defendants as follows:

"It is therefore ordered, adjudged and decreed by the court that the land described in said judgment in cause No. 19211, the title to which was thereby divested from the plaintiff in said cause, Mary F. Wyman, and vested in the defendants in said cause, H. D. Cowan, et al., is the following described land:

"Being out of and a part of the P. H. Herndon survey, abstract No. 256, Montgomery County, Texas, described by metes and bounds as follows:

"Beginning in the south line of said survey at a car axle, from which a 14" sweet gum bears North 17 degrees E. 20.3 vrs.; a 14" pine brs. North 35 degrees W. 12.5 vrs.; and 8" sweet gum brs. South 27 E. 12.7 vrs.; and a 16" pine brs. North 74 degrees 45' 8.0 vrs. all bearings marked X;

"Thence North 62 degrees 30' W. with an old marked line more particularly described by J. M. Hall, Jr., in field notes of a survey made February 9 to 17, 1939, which field notes are recorded in Book 3, Page 97, of the Private Surveyor's Records of Montgomery County, Texas, 2022.8 vrs. to a car axle in the north line of said survey;

"Thence north 74 degrees 17' E.; at 173.35 pass an iron bolt and a fence corner, from which bolt a sweet gum 14" in dia. brs. N. 27-½ W. 9.7 vrs., a sweet gum 6" in dia. brs. N. 88-½ E. 5 vrs.; a sweet gum 6" in dia. brs. N. 77½ E. 4.7 vrs., and a sweet gum 18" in dia. brs. S. 71 degrees 15' E. 12.00 vrs., all bearings marked 'X'; and continuing N. 74 degrees 17' E. a total distance of 201 vrs. from said car axle;

"Thence S. 75 E. 2710.75 vrs. to the south line of the Herndon survey;

"Thence with the south line of said Herndon survey S. 74 degrees 15' W. 1057.3 vrs. to the place of beginning."

From this judgment Plaintiffs have taken this appeal. Plaintiffs have assigned several Points of Error; but such of these Points as are material are disposed of by the following comments, and therefore need not be summarized.

(1) We adopt Plaintiffs' second contention, as we have stated it above, and hold as a matter of law that the eastern line of the tract described in the prior judgment is to be constructed by running a line from the northeast corner of said tract, as said corner has been described and located in the judgment appealed from in the present cause, to a point on the southern boundary of the Herndon survey 70 varas eastward of the southwest corner of said tract, as the judgment appealed from in the present cause locates and describes said southwest corner. For the western line of the tract described in the prior judgment and for the northern line of said tract, we adopt the western and northern lines of said tract as the same are located and described in the judgment appealed from in the present cause. This holding is based upon the following comments and conclusions:

Waddill, as has been stated, computed the results of the various contentions made by the parties; and the findings made on his survey and his computations show that the contruction of the prior judgment adopted by us departs less from the various elements of the description set out in that judgment, considered as a whole, than does any other. Waddill's computations have not been disputed; these computations are the results of mathematical calculations, and we have assumed that they were correct. These computations will sufficiently appear from the following statement of the results of the various contentions before us.

Plaintiffs' first contention, that for the cross fence east of the Wyman/Etter line as the eastern line of the tract described in the prior judgment, cannot be give effect in the present action for reasons hereinafter stated; but we shall note here the differences between the tract bounded by the cross fence and the tract described in the prior judgment. In the first place, the adoption of this fence would result in a triangular tract instead of the four sided tract outlined in the prior judgment. Too, the apex of this triangle would be some 40 varas north of the Herndon south boundary as contrasted with the 70 varas along the Herndon south boundary for which said judgment calls. Too, the course of the eastern line would not be quite straight,

although the prior judgment calls for a straight line along the eastern side of the tract it describes; and the northern line would only be 173.35 varas long, as contrasted with the 201 varas called for in the prior judgment. Waddill's plat of his own survey shows the area of this triangle to be 18.73 acres (19.71 acres, according to his plat of Hall's field notes); and this area does bear some reasonable relation to the "22 acres, more or less" which the prior judgment states as the area of the tract it describes. However, every other element of the field notes used in the prior judgment must be discarded if the cross fence is to be the eastern line of the tract described in the prior judgment.

The contention put forward· by Defendants also departs in many material respects from the description in the prior judgment, according to Waddill's computations it has the following results: (a) it gives the eastern line, extended from the northeastern corner called for in said prior judgment to the southern boundary of the Herndon survey on a straight course South 75 deg. East, a length of 2710.75 vrs. as contrasted with the 1900 vrs. called for in said prior judgment. The excess is 810.75 varas, nearly half a mile, and 42.6 per cent of the distance called for in the judgment. (b) It requires that the word "about" used in the prior judgment to qualify the course of the eastern line of the tract described in said judgment be utterly discarded and given no effect. (c) It extends the length of the south line of the tract described in said prior judgment from the 70 varas called for in said judgment to a distance of 1057.3 varas. To obtain this latter distance the length of the south line, as called for in said prior judgment, must be multiplied some 15.1 times. (d) It increases the area of the judgment tract from the "22 acres, more or less" stated in said prior judgment, and also stated in Special Issue 6 as copied into said judgment, to an area of 154.45 acres. To obtain this latter acreage, the statement of acreage in the prior judgment must be multiplied 7 times.

The contention which we have adopted does depart in some respects from elements of the description in the prior judgment, but two of the elements departed from are only estimates. Our holding gives effect to the calls made in the prior judgment for the northern, western and southern lines of the tract described in said judgment, with the respective corners called for in said judgment. It results in an eastern line for that tract which is 1916 varas long as contrasted with the 1900 varas for which said judgment calls; but the excess is 16 varas in a distance exceeding a mile. However, according to Waddill's computations, the eastern line will run on the course of South 59 deg. 35' East, as contrasted with the "about South 75 deg. East" for which the prior judgment calls, and the acreage of the tract closed by the eastern line we have adopted will be 33.26 acres, as contrasted with the "twenty two acres" referred to in Special Issue 6 and the "22 acres, more or less" stated in said prior judgment.

With Waddill's computations it is proper (although we do not think it absolutely necessary) for us also to consider the fact that the eastern line of the tract described in the prior judgment was not surveyed. For if the word "about" in the course given the eastern line in said prior judgment is interpreted as meaning a close approximation to South 75 deg. East, the field notes in the prior judgment are patently erroneous. These field notes state the course of the western line as North 62 deg. 30' West. If this call is reversed and if the description of the eastern line is interpreted as calling for a course nearly approximating South 75 deg. East, then the prior judgment calls for Western and Eastern lines which diverge from the ends of a north line 201 varas long and which thus could not meet at the ends of a south line only 70 varas long. Since this result was patent and open to the eye of the person who drafted the prior judgment, it suggests, of course, either that the word "about" was not intended to signify a close approximation to South 75 deg. East, or that the figures "75" are erroneous.

█ Under the circumstances, we think that the meaning and the legal effect of the field notes appearing in the prior judgment are to be determined under these rules of

construction: (a) The judgment should be read as a whole and every part of it should be construed with reference to the whole. See Section 618 of Williston on Contracts. (b) If possible, we should give effect to all parts of the judgment. We prefer a construction which gives a reasonable meaning to all of the provisions of the judgment instead of a construction which leaves a portion of the judgment useless or inexplicable; but if this is impossible, then we should adopt a construction which gives effect to the main apparent purpose expressed in the language of the judgment. See Section 619 of Williston, and Harrison v. Manvel Oil Co., 142 Tex. 669, p. 678, 180 S.W.2d 909, citing Blackwell v. Coleman County, 94 Tex. 216, 59 S.W. 530. Williston's statements refer to general rules for construing written instruments and may be applied to the description in the prior judgment as well as to descriptions in deeds. (c) In determining the main apparent purpose expressed in the language of the judgment, it will be proper for us to stress those elements of the field notes in the prior judgment which seem to be of most importance and which seem to indicate most clearly the land intended to be described. The following statement in Wilson v. Giraud, 111 Tex. 253, p. 264, 231 S.W. 1074, 1078, is also to be kept in mind: "If, however, it were impossible to reasonably so interpret the patent as to prevent the disregard of any of the calls, we would still have no hesitancy in rejecting the call for the Barrow north line. In determining boundaries, when all the calls cannot be followed, as few should be disregarded as possible."

With these statements in mind, the description in the prior judgment, re-read, outlines a four cornered, four sided tract, each side a straight line.

*The West line* of this tract, without dispute, is the Wyman/Etter line, and the termini of this line, under the surveyor's findings, are in the *northern and southern* boundaries of the Herndon Survey.

*The Northern line* of said tract, although it is described in the prior judgment as running North 75 deg. East and although it is not described in said judgment as following the northern boundary of the Herndon Survey, was nevertheless clearly shown to lie upon that boundary, where the trial court has placed it. For said tract is described as being in the Herndon survey, and the course North 75 deg. East would run outside of the northern Herndon boundary, which the surveyors found to be upon the course North 74 deg. 15' East. Too, the prior judgment shows the northern and southern lines of this tract to be parallel, locates the southern line of said tract in the Herndon south boundary, and as stated, puts the northern and southern lines of said tract at the respective ends of a line which the proof shows to have its termini in the northern and southern boundaries of the Herndon, which the proof shows to be parallel, too. If we change the course of the Herndon southern boundary so that it fits the surveyors' findings, and if we make a correspondingly change in the southern line of said tract, as we must under the field notes in the prior judgment, then the northern line of said tract necessarily falls upon the northern Herndon boundary. The description of the northern line of said tract as stated in the prior judgment gives rise to a latent ambiguity when applied to the ground, but the facts proved resolve this ambiguity as a matter of law. This northern line of the tract will run eastwardly along the Herndon northern boundary from the northern end of the Wyman/Etter line for the distance of 201 varas called for in the prior judgment, and the northeastern corner of said tract is at the eastern end of said line. This call for distance necessarily controls because no other information is given by which to fix the northeastern corner of said tract.

*The Southern line*:—To fix the other lines of said tract one may next return to the beginning point, namely, the southern end of the Wyman/Etter line, and reversing the call made in the prior judgment, run eastwardly along the Herndon south line for the distance of 70 varas as called for in said prior judgment. This call for distance is to be given controlling effect in fixing the length of the south line of said tract and the southeastern corner of said tract because no other definite information is stated in the prior judgment whereby

the southeastern corner of the tract described in said judgment can be fixed upon the ground. We think that this south line and southeast corner may be fixed in this way, by returning to the beginning corner and reversing the call for the south line, because that beginning corner was the best fixed and most readily identifiable point referred to in the field notes in said prior judgment, and because the description in the prior judgment of the south line of the tract is clear and definite as contrasted with the course of the eastern line, which is only estimated and which, in fact, was not surveyed upon the ground. The southern line of said tract, which is described in full detail, not only by course and distance but also by reference to two intersecting boundary lines, was quite evidently thought to be of more importance in fixing the location of the tract upon the ground than was the eastern line; and the same comment might be made of the northern and western lines as contrasted with the eastern line. The southern, western and northern lines of the tract simply indicate with more certainty the land intended to be described than does the eastern line in connection with the western and northern lines of said tract.

*The Eastern line*:—Since the four corners of the tract have thus been fixed, and since the tract as described in the prior judgment has four sides, each side a straight line, the eastern line is to be constructed by running a line from the northeast to the southeast of these corners.

This construction is the only one suggested, and the only one which has occurred to us, which is consistent with the rules of construction referred to above. We note the following additional circumstances in support of our conclusions:

■ Under the aforesaid rules of construction, we should give some weight to the estimate of area made in the prior judgment if we can do so. We cannot arbitrarily assume that this estimate was wholly wrong or meaningless. See: Humble Oil & Refining Company v. Ellison, 134 Tex. 140, 132 S.W.2d 395 and decisions cited. The estimate of a 22 acre area made in the prior judgment, not only in the de-

scription of the tract adjudicated in that judgment but also in Special Issue 6 copied in the forefront of said judgment, forcibly indicates that prior cause 19211 was not thought to involve such a multiplication of that area as it represented by the 154.45 acres which the contention of the present defendants entails. Such an area as the 33.26 acres embraced within the lines adopted by us is much more likely to have been in the minds of the parties and of the trial judge.

■ Under said rules of construction, we also should, again if we can do so, make some use of the word "about", which, as it appears on the face of the prior judgment, is a part of the description of the course of the eastern line called for in said judgment. Cooperative Bldg. Bank v. Hawkins, 30 R.I. 171, 73 A. 617; Ingelson v. Olson, 199 Minn. 422, 272 N.W. 270, 110 A.L.R. 167.

The word "about", used as one of two statements fixing the course of said eastern line, was presumably intended to qualify the other of said descriptive statements, namely, the words South 75 deg. East, and to control the course of that line and to prevent said line from running unmodified along a course of South 75 deg. East. The word "about" expresses an estimate; its use in the prior judgment as one of the words "South about 75 deg. East" defining the course of said eastern line signifies, prima facie, that the course of this line was not known and that the figures stated were but estimates of where the true course would run. We can certainly give "about" this significance under the facts before us, and since we can do this, we are bound to do so. We have no more right in such a case to discard "about" than we have to discard the call in the prior judgment for the Wyman/Etter division line.

■■ The estimate expressed by "about", of course, is ordinarily a fairly close approximation; but the context in which the word appears may show that it expresses only a rough figure, a guess. According to Waddill's computations, the eastern line of the tract described in the prior judgment, as we have fixed and re-described said line above, will run on the course

South 59 deg. 35' East, which differs 15 deg. 25' from South 75 deg. East. This is a very material difference, and would not be within the ordinary meaning of the word "about". Since this departure is so considerable and since the word is so commonly used and the error in its use (giving "about" its normal meaning) is so patent upon the face of the judgment, we think that "about" is not to be construed as expressing a rough estimate. We think, instead, that it was intended to express a reasonably close estimate and that it fails to do so upon the face of the judgment because of an error in the figures "75". If these figures were reversed and the call in the prior judgment for the eastern line made to read "South about 57 deg. East" (instead of 75 deg. East) the call would actually be a near approximation of the course 59 deg. 35' East which Waddill computed. It is near enough to come within the ordinary meaning of "about", and under the circumstances of the case, we hold as a matter of law that an error did occur in writing the description of the eastern line called for in the prior judgment, and that the figures "75" are to be reversed. As to the degree of probability required see Mansel v. Castles, 93 Tex. 414, 55 S.W. 559. This conclusion enables us to give full effect to "about" and to construe it as directing the course of the eastern line to the eastern end of the southern line of the tract. The following decisions show that similar errors, whether patent or latent, and whether expressed on the face of judgments or deeds, have often been corrected by appellate courts in trespass to try title actions, without pleading or prayer for equitable relief. See: Coffey v. Hendricks, 66 Tex. 676, 2 S.W. 47; Barnard v. Good, 44 Tex. 638; Poitevent v. Scarborough, 103 Tex. 111, 124 S.W. 87; Krider v. Hempftling, Tex.Civ.App., 137 S.W.2d 83; Noland v. Weems, Tex.Civ. App., 141 S.W. 1031, p. 1034; Robertson v. Lee, Tex.Civ.App., 266 S.W. 862; Talkin v. Anderson, Tex.Civ.App., 19 S.W. 350, 19 S.W. 852; Mansel v. Castles, 93 Tex. 414, 55 S.W. 559; Miller v. Lemm, Tex.Com. App., 276 S.W. 211; Pearson v. Lloyd, Tex.Civ.App., 214 S.W. 759. Also see: (1) Smith v. Chatham, 14 Tex. 322;

Hinkle v. Hays, Tex.Civ.App., 162 S.W. 435; Carlisle & Co. v. King, 103 Tex. 620, 133 S.W. 241, 245; Connor v. Mangum, Tex.Civ.App., 127 S.W. 256; (2) Arambula v. Sullivan, 80 Tex. 615, 16 S.W. 436; Wadsworth v. Vineyard, 105 Tex. 245, 147 S.W. 560; Kingston v. Pickins, 46 Tex. 99; Wilson v. Giraud, 111 Tex. 253, 231 S.W. 1074; (3) Douthit v. Robinson, 55 Tex. 69; Berry v. Wright, 14 Tex. 270; Davis v. Tate, Tex.Civ.App., 101 S.W.2d 1069; (4) West v. Houston Oil Co., 46 Tex.Civ. App. 102, 102 S.W. 927.

It seems to us that Defendants' construction of the field notes in the prior judgment is founded upon two arguments, namely, that the word "about" discussed above should be discarded, and that the description in the prior judgment of the eastern line of the tract awarded defendants in prior cause 19211 should then be treated as calling generally for the southern boundary of the Herndon survey, as distinguished from some definite point on that boundary. These arguments, however, conflict with the general rules stated above for construing written instruments. It seems to us, too, that Defendants' argument concerning "about" actually provides no more than a mechanical solution for a problem involving several matters. The argument furnishes no satisfactory reason for disregarding only a part of the description of the eastern line. Under the circumstances of this case, and under the decisions cited above wherein the courts corrected errors in field notes, why not discard the entire description of the eastern line?

(2) Defendants say, in effect, that the present action is a collateral attack upon the judgment in prior cause 19211, and that Plaintiffs, without pleading or prayer for equitable relief, are attempting to relitigate issues which were adjudicated in said prior cause.

The argument is overruled as regards the construction we have made of the field notes in the prior judgment. We have but interpreted those field notes and ascertained their meaning. We have resorted to some extent, to proof of matters extraneous to the judgment but none of this proof pertains to issues litigated in prior

cause of 19211. Our reference to the fact that the eastern line in the prior judgment was unsurveyed is consistent with the language of said judgment. The description made in said judgment of said eastern line shows that the course of that line was not known; and proof that the line was unsurveyed but explains the failure to state the course of that line and the uncertainty incidental to the description of that line in said prior judgment. We think that we need not have resorted to this item of evidence, but the item is relevant and affords support for our conclusions and has therefore been referred to. Pleading and prayer for equitable relief are unnecessary to resolve such ambiguities and uncertainties as the facts reveal, or to correct the probable error in the figures "75". See the following decisions, already cited, regarding judgments: Mansel v. Castles, 93 Tex. 414, 55 S.W. 559; Poitevent v. Scarborough, 103 Tex. 111, 124 S.W. 87; Harrison v. Manvel Oil Co., 142 Tex. 669, p. 678, 180 S.W.2d 909, 679 (Headnote 6); Miller v. Lemm, Tex.Com.App., 276 S.W. 211; Robertson v. Lee, Tex.Civ.App., 266 S.W. 862; Pearson v. Lloyd, Tex.Civ. App., 214 S.W. 759. See the following decisions concerning deeds and grants: Smith v. Chatham, 14 Tex. 322; Coffey v. Hendricks, 66 Tex. 676, 2 S.W. 47; Arambula v. Sullivan, 80 Tex. 615, 16 S. W. 436, and other cases cited, and also see: Benavides v. State, Tex.Civ.App., 214 S.W. 568, concluding sentence on page 571; Plummer v. McLain, Tex.Civ.App., 192 S.W. 571; Pinckney v. Young, Tex. Civ.App., 107 S.W. 622; Green v. Burns, 9 Tex.Civ.App., 660, 29 S.W. 545.

However, we agree that Plaintiffs' claim of the cross fence for the eastern boundary of the tract described in the prior judgment would involve a collateral attack upon that judgment. For there is nothing upon the face of said judgment which suggests that the description herein of the eastern line was intended as a description of the cross fence, nor do any of the ambiguities raised by application of the judgment to the ground suggest that the eastern line called for in said judgment was the cross fence or the course of said fence. The rule to be applied is stated in Harrison v. Manvel Oil Co., 142 Tex. 669, 180 S.W.2d 909. In arriving at this conclusion we have not overlooked the fact that the description in the prior judgment was copied from the petition in prior cause 19211 and that this petition also referred to the tract so described as the land fenced by Kuykendall. According to the testimony of Waddill and of Mrs. Wyman, the cross fence must have been the Kuykendall fence. Waddill found no evidence of such a cross fence to the west and Mrs. Wyman said that there had not been one to the east during her ownership, a period of some 40 years prior to the time she testified. Nevertheless, the judgment omitted the statement in the petition concerning Kuykendall having the land under fence, and the plain inference is that the omission was intentional, and thus, that the cross fence was not called for as the eastern line. The omission suggests no uncertainty. The uncertainties incidental to the field notes used in the prior judgment do not authorize us in this action to go behind the judgment and determine that the cross fence actually was called for, because all of these uncertainties have been resolved. An uncertainty which has been revealed and resolved does not authorize a search for concealed ambiguities and uncertainties.

(3) Defendant Mike C. Harris, of course does not occupy the status of an innocent purchaser. See: Carter v. Hawkins, 62 Tex. 393; West v. Houston Oil Co., 46 Tex.Civ.App. 102, 102 S.W. 927; Carlisle & Co. v. King, 103 Tex. 620, 133 S.W. 241; Miller v. Lemm, Tex.Civ.App., 276 S.W. 211; Douthit v. Robinson, 55 Tex. 69, and other cases cited above.

(4) The foregoing comments adjudicate such of the arguments as are material to our judgment, and require that the judgment of the trial court be reversed.

As between Plaintiffs and Defendants judgment will be rendered in behalf of Plaintiffs against Defendants for a tract of land bounded on the west by the eastern line of the tract described in the prior judgment, as we have fixed the location

of said line, and bounded on the east by the eastern line of the tract which the trial court awarded Defendants in the judgment appealed from. Judgment will be rendered that Plaintiffs take nothing against Defendants as regards the tract described in the prior judgment as we have fixed the location of said tract, namely, the land bounded on the west by the western line of the tract which the trial court awarded Defendants in the judgment appealed from, and bounded on the east by the western line of the tract for which judgment is to be here rendered in behalf of Plaintiffs.

█ Plaintiffs having thus succeeded on this appeal, they shall recover all costs of the Defendants, both in the trial court and in this court.

It appears from the pleadings that Defendant Harris filed a cross action against his grantors, praying a recovery over against them upon their warranty. The trial court's judgment denied Defendant Harris a recovery on this cross action, but we construe the judgment appealed from as a determination that Defendant Harris owned all of the land in suit, and from this the denial of relief against the warrantors necessarily followed. This phase of the trial court's judgment is only an incident of the judgment as between plaintiffs and defendants, and our reversal of the trial court's judgment and our rendition of a judgment in behalf of Plaintiffs requires that this cross action be remanded to the trial court for adjudication.

Judgment is rendered accordingly.

On Motions for Rehearing.

Both appellants and appellees have filed motions for rehearing. These motions have been considered and are overruled.

█ On re-reading our opinion we have noted expressions concerning Defendant Harris' title which need not have been made and which, upon a reconsideration of the record, appear to have been founded upon a mis-construction of the deeds in the chain of title of said defendant. We refer to the following statement in the third paragraph of our opinion reading: "Whether he has done so, or whether the deed under which he holds describes a tract which lies east of the tract described in said prior judgment, except as it overlaps an infinitesimal segment of the northeast corner of the said latter tract, is a question which we need not and do not decide on the present appeal." We also refer to the following statement in the fourth paragraph of our original opinion, reading: "The identity and location of the tract they have conveyed to him will doubtless be a question to be determined upon the trial of that cross-action." The statements just quoted are withdrawn. Defendant Harris contends that the deeds in his chain of title conveyed to him the tract of land described in the judgment rendered in prior cause 19211. The trial court rendered judgment in his behalf sustaining this contention and we are satisfied that Cross-Defendants Pitts and Liles actually did convey to Defendant Harris neither more nor less that the very tract of land which is described in said prior judgment. Further, Plaintiffs have not attacked the sufficiency of Defendant Harris' deeds to convey said tract. This tract, of course, is the very tract concerning which we adjudged that Plaintiffs take nothing. Defendant Harris' construction of the description of the tract referred to in said prior judgment and conveyed by his deeds was not sustained by this court, but he has lost no land which was conveyed to him. His title has not failed, in whole or in part, and under such circumstances it must be said that Cross Defendants' warranty of title (which was a covenant of general warranty) has not been breached. Stark v. Homuth, Tex.Civ.App., 45 S.W. 761; Bennett v. Latham, 18 Tex.Civ.App. 403, 45 S.W. 934; Crump v. Wilson, Tex.Civ. App., 260 S.W. 296; Broussard v. L. Cartwright Realty Co., Tex.Civ.App., 179 S.W. 2d 777. There is no uncertainty regarding any of these matters which, under Rule 434, Texas Rules of Civil Procedure, would require the cross action to be remanded. We have re-read the pleadings. Defendant Harris plead nothing against Cross Defendants except a breach of the general warranty of title. Cross Defendants admitted that they had made such a

covenant, but in Paragraph XIV of their answer they alleged that Plaintiffs were suing for land which they had not conveyed to Defendant Harris. It thus appears that the facts make out a defense in bar of the cross action which is supported by the pleadings and that the trial court rendered the right judgment in denying Defendant Harris any recovery against Cross Defendants. The facts pertaining to Cross Defendants' liability in warranty have been fully developed and there is no suggestion, in pleading or otherwise, of any other liability. We accordingly erred in reversing this phase of the trial court's judgment; and on our own motion we now set aside that part of our original judgment which reverses the part of the trial court's judgment denying Defendant Harris a recovery against Cross Defendants Pitts and Liles and that part of our judgment which remands the cross action to the trial court. Instead, we now render judgment affirming this part of the trial court's judgment. Our original judgment remains in force except as thus amended.